Teresa G. KOLAR, Appellant,

v.

Larry W. KOLAR, Respondent.

No. WD 61368.

Missouri Court of Appeals,
Western District.

Sept. 9, 2003.

Todd Alan Nielsen, Kansas City, for appellant.

Michael McIntosh, Independence, for respondent.

PAUL M. SPINDEN, Presiding Judge.

Teresa G. Kolar appeals the circuit court's judgment dissolving her marriage to Larry W. Kolar. She contends that the circuit court erred (1) by failing to enter a qualified domestic relations order (QDRO), (2) by inequitably dividing the marital property, and (3) in ordering her to pay retroactive child support. We affirm in part and reverse and remand in part.

In her first point, Teresa Kolar asserts that the circuit court erred by not entering a QDRO and by not retaining jurisdiction to enter a QDRO concerning a retirement savings plan and a pension plan that Larry Kolar had acquired during his employment with General Motors. Concerning the division of property, the circuit court found that Teresa and Larry Kolar had acquired as marital personal property the "GM Personal Savings, divisible by a QDRO" and the "General Motors Pension, divisible by a QDRO." In its division of the marital property, the circuit court ordered that Teresa Kolar receive "40% of marital portion of GM Personal Savings and GM Pension applicable under the formula announced in *Lynch v. Lynch*, 665 S.W.2d 20 (Mo.App.1983) wherein the Participant's monthly benefits are timed by months of employment during marriage of the parties/ over total months of employment." The circuit court also ordered that Larry Kolar receive the remaining 60 percent of the savings and pension plans calculated in accordance with the formula set out in *Lynch*.

 Section 452.330.5, RSMo 2000, says:

The court's order as it affects distribution of marital property shall be a final order not subject to modification; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

Contrary to Teresa Kolar's contention, the circuit court intended to create a QDRO, as evidenced by its judgment. "By statute, an order so intended may be modified in order to 'establish' it as a QDRO." *Ochoa v. Ochoa*, 71 S.W.3d 593, 596 (Mo. banc 2002). The circuit court, therefore, retained jurisdiction pursuant to § 452.330.5 to modify its order.

In her motion asking the circuit court for rehearing, Teresa Kolar asserted that the circuit court's judgment did not show that it was "retaining jurisdiction for purposes of signing QDROs related to pension division." The circuit court correctly denied this motion. The judgment need not reflect that the circuit court was retaining jurisdiction. Section 452.330.5 gives the circuit court the right to modify its order "for the purpose of establishing ... the order as a qualified domestic relations order[.]" [1]

 Teresa Kolar next complains about the circuit court's dividing the marital property. She contends that the circuit

---

1. Teresa Kolar may seek to modify the circuit court's order for the purpose of establishing the order as a QDRO, but the record does not reflect that she asked the circuit court to do this.

court erred by including assets worth $8223.99 in its property division because the assets did not exist at the time of trial. She complains about the circuit court's including in her share of the property division two items, "Bank of America (November 2000), value $2,100.00" and "Retainer paid (wife's attorney), value $1,500.00," and she complains about the circuit court's reducing her share of equity in the marital home by $4623.99 as a "debt adjustment."

■ Generally, the circuit court must use the value of marital property as of the date of trial. *In re Marriage of Gustin,* 861 S.W.2d 639, 644 (Mo.App.1993). When the circuit court hears evidence that one spouse has secreted or squandered a marital asset in anticipation of divorce, it may hold that party liable by awarding the property to him or her. *Schneider v. Schneider,* 824 S.W.2d 942, 947 (Mo.App. 1992); *S.L.J v. R.J.,* 778 S.W.2d 239, 244 (Mo.App.1989), *cert. denied,* 494 U.S. 1086, 110 S.Ct. 1823, 108 L.Ed.2d 952 (1990).

The circuit court did not explain the basis for its including the $2100 from the Bank of America certificate of deposit or the $1500 paid to Teresa Kolar's attorney in the property division. No evidence established that Teresa Kolar secreted or squandered any marital funds in anticipation of the divorce action. At the dissolution hearing, Larry Kolar testified:

> She filed October of 2000, and we had that CD which was our only savings we had at the time, and I told her—I said, "I want to be up-front—fair about this money. I know you're entitled to half of this CD," I said. And it hadn't quite

matured yet, so when it matured, I said, "Go up, cash it out. You keep half and give me half, and we'll get that out of the way." Well, she did. She went out and cashed it out, then she—she—she just rolled it over into checking. Well, it's my fault partially. I should have went ahead and withdrew the money and just kept it in cash. Well, she spent her half and my half, too, and that was about the time she hired her attorney. And I think probably a big part of my half went to—.[2]

Larry Kolar does not contend that his wife squandered or misused money in anticipation of divorce. Hence, the circuit court improperly awarded Teresa Kolar the certificate of deposit and the $1500 that she paid to her attorney. *Witt v. Witt,* 930 S.W.2d 500, 505 (Mo.App.1996). On remand, the circuit court shall consider the impact of the redistribution of the certificate of deposit and the $1500 retainer fee to the property division.

As to the remaining $4623.99, contrary to Teresa Kolar's contention, the circuit court did not include this amount in its division of property. Instead, the circuit court labeled the money as "debt adjustment:"

> Other debt adjustment created by Husband for payment on Wife's behalf during separation:
>
> i. Car payments, $2,292.72;
> ii. Car Insurance, $575.68;
> iii. Half First USA CC, $503.38;
> iv. Half Fleet (MBNA America), $527.00;
> v. Half 2000 Personal Property Tax, $247.39;
> vi. Cello, $237.82;
> vii. Cello, $240.00.

TOTAL: $4,623.99

**2.** As for the $1500 used to pay the attorney, we can surmise from Larry Kolar's testimony that he believed that "a big part" of his half of the certificate of deposit was used to pay the attorney. The circuit court sustained Teresa Kolar's objection to Larry Kolar's testimony on grounds that it was speculative and non-responsive to the question asked, but, if we were to accept Larry Kolar's testimony, we would conclude that the fee came from the same certificate of deposit that the circuit court had already accounted for and had included in the property division.

After finding the debt adjustment amount, the circuit court awarded the marital home to Larry Kolar but awarded a lien on the property to Teresa Kolar:

> [Teresa Kolar] shall receive judgment of $21,007.51 against [Larry Kolar] which shall constitute a lien on said property to the extent it represents 40% of the net equity in the marital property to be assigned the parties as set forth below after considering and reducing husband's share of equity by $4,623.99 of other debt adjustment.

Teresa Kolar contends that this provision had the effect of reducing her share of the equity in the marital home by $4623.99 because of the debt adjustment.

We are unsure, however, what the circuit court was trying to accomplish with this provision. It stated that it was reducing Larry Kolar's share of the equity—not Teresa Kolar's share. Because Larry Kolar paid the debts on behalf of Teresa Kolar, we question why his share would be reduced by the amount of the "debt adjustment."[3]

■ "Generally, for a decree or judgment to be enforceable, it must be definite and certain." *Sanders v. Sanders*, 933 S.W.2d 898, 902 (Mo.App.1996). Because of the confusion surrounding this provision, we are remanding this case to the circuit court so it can clarify what it was attempting to accomplish in this provision.

Teresa Kolar also asserts that the circuit court erred in entering its judgment four months after the hearing in this case. She contends that the circuit court did not take account of changes in her circumstances that had occurred between the trial and the circuit court's issuance of its judgment

four months later. The only change in circumstance to which Teresa Kolar points is her losing her job. She argues this alone could have affected the division of marital property, the determination of maintenance, and the issues of child custody and child support.

Because we are remanding this case to the circuit court to reconsider the property division, it is unnecessary to address Teresa Kolar's contention that circuit court did not consider her loss of employment when it issued its judgment on the property division.

■ As to maintenance, Teresa Kolar's loss of a job and temporary unemployment would not have required an award of maintenance. *Kovacs v. Kovacs*, 869 S.W.2d 789, 794 (Mo.App.1994). Moreover, in regard to child custody and child support, Teresa Kolar can seek modification of those judgments under proper circumstances pursuant to §§ 452.370 and 452.410, RSMo 2000.

Teresa Kolar also contends that the circuit court erred in awarding her only 40 percent of the marital property. The circuit court found that an equal division of the marital property was "not equitable under the facts of this case due to the conduct of [Teresa Kolar]." The evidence established that Teresa was having an extramarital affair near the end of the marriage.

■ " 'The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case.' " *Shepard v. Shepard*, 47 S.W.3d 412, 417 (Mo.App.2001) (citation omitted). Generally, "the division of marital property should be substantially equal

---

**3.** Even if we were to assume that the circuit court intended to reduce Teresa Kolar's share of the equity by the "debt adjustment" amount and then award her the remaining amount, the resulting figure would not be the $21,007.51 figure that the circuit court calculated.

unless one or more statutory or non-statutory factors causes such a division to be unjust." *Hatchette v. Hatchette,* 57 S.W.3d 884, 889 (Mo.App.2001). Section 452.330.1(4), RSMo 2000, requires the circuit court, when dividing the marital property, to consider the "conduct of the parties during the marriage[.]" The circuit court, however, cannot use a disproportionate division of the marital property to punish a spouse for his or her misconduct. *Messer v. Messer,* 41 S.W.3d 640, 643 (Mo. App.2001). " ' "[I]t is only when misconduct of one spouse changes the balance so that the other must assume a greater share of the partnership load that it is appropriate that such misconduct affect the distribution of property." ' " *Nelson v. Nelson,* 25 S.W.3d 511, 519 (Mo.App.2000) (citations omitted).

 "The added burden placed on a spouse sufficient to justify a disproportionate division of marital property does not have to be a financial one." *Ballard v. Ballard,* 77 S.W.3d 112, 117 (Mo.App. 2002). An extramarital affair can be an added burden sufficient to justify a disproportionate division of marital property provided the evidence establishes the specific added burdens the non-offending spouse suffered as a result of such misconduct. *Id.* at 117–18

 The record establishes that Teresa Kolar's extramarital affair placed an added burden on Larry Kolar during the course of the marriage justifying a disproportionate division of marital property favoring him. Concerning the affair, Larry Kolar testified:

Well, she's continued—... when I confronted her with [the affair], told her I knew everything—[w]ell, she continued living under the same roof, still went on about her affair, lingerie hanging in the laundry room, kind of in-your-face type thing. I was still paying all the bills. She was still not contributing

anything, but she was spending our—my income that would normally go towards the household for her so-called partying and her—her rendezvous and—.

. . . .

. . . And it's pretty hard to live under the same roof [with] somebody that you know that's been sleeping with somebody else, but they're also still spending your money, eating your food, and [you're] just supposed to act like nothing happened.

The circuit court properly considered Teresa Kolar's conduct in distributing the marital property and awarding her only 40 percent of the marital property.

Finally, Teresa Kolar asserts that the circuit court erred in ordering her to pay $5466 in retroactive child support. She contends that she made substantial expenditures to her two children during the period covered by the retroactive child support and that the circuit court should have credited those amounts to her in calculating the amount of retroactive child support.

 The circuit court has much discretion in awarding retroactive child support, and we will not reverse its decision in the absence of a showing of a clear abuse of discretion. *Gatton v. Gatton,* 35 S.W.3d 930, 932 (Mo.App.2001). Section 452.340.1, RSMo 2000, authorizes the circuit court to award retroactive child support to the date of the filing of the petition. Further, "[t]he party ordered to pay retroactive support is entitled to receive credit for voluntary amounts paid to the child between the time of separation and the time of trial." *Runge v. Runge,* 103 S.W.3d 804, 807 (Mo.App.2003).

In its judgment, the circuit court ruled, "[Teresa Kolar] shall pay to [Larry Kolar] child support in the sum of $455.40 per month retroactive to the first day of April 2001, and a like sum on the first day of each and every month thereafter until fur-

ther order of the court." Teresa Kolar admitted at the dissolution hearing that she did not pay any child support to Larry Kolar during the couple's separation. Although she asserts that her income and expense statement "sets forth the fact that as of November 9, 2001—just one week prior to trial—[she] was expending vast sums on direct and indirect payments for the benefit of the minor children," the income and expense statement shows merely her "anticipated expenses" for the children.

 She asserts that she had "her daughter in her actual custody during the retroactive period for days and even a week at a time" and that she "even provided [her] daughter ... a vacation to San Antonio over the week of July 2, 2001." Teresa Kolar, however, presented no evidence at trial indicating the specific amounts she expended on her children. She is not entitled to credit for payments of unspecified amounts. *Id.* at 808.

We reverse the circuit court's judgment awarding to Teresa Kolar, as part of her marital property, the $2100 certificate of deposit and the $1500 used for her attorney's retainer fee. We remand the case to the circuit court to consider the impact of the redistribution of the certificate of deposit and the $1500 retainer fee to the property division. On remand, the circuit court shall also clarify what it was attempting to accomplish in regard to the "debt adjustment," the so-called lien on the marital home, and the distribution of the equity in the marital home. In all other regards, we affirm the circuit court's judgment.

THOMAS H. NEWTON, Judge, and RONALD R. HOLLIGER, Judge, concur.