Troy A. MILNE, Respondent,

v.

Amy Lynn MILNE, Appellant.

No. WD 62743.

Missouri Court of Appeals,
Western District.

July 13, 2004.

1. All citations are to RSMo 2000, unless otherwise indicated.

Thomas R. Summers, St. Joseph, MO, for appellant.

Erwin L. Milne, Jefferson City, MO, for respondent.

Before RONALD R. HOLLIGER, ROBERT G. ULRICH, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Amy Milne ("Wife") appeals a decree dissolving her marriage to Troy Milne ("Husband"). Wife raises three points on appeal regarding the trial court's division of marital property. Wife contends that the court erred (1) in calculating the marital component of the family home owned by Husband, (2) in failing to designate the value of grain from farming operations conducted by Husband as marital property, and (3) in dividing the marital property unequally. We reverse the judgment of the trial court and remand the case for a division of marital property consistent with this opinion.

### Factual Background

The parties were married on June 17, 2000. No children were born of the marriage. The parties resided in a home that Husband had purchased prior to the marriage. On or about April 12, 2002, the parties separated. Nearly one month later, on May 1, Husband filed a "Petition

for Dissolution of Marriage" with the Circuit Court of Holt County. On May 13, Wife answered Husband's petition and filed a counter-petition.

This matter went to trial on December 12, 2002. In support of their petitions, both parties testified, called witnesses to the stand, and entered evidence into the record.

On December 26, 2002, the court entered a Judgment and Decree of Dissolution, ordering the dissolution of the marriage and taking the property issues under advisement. On March 14, 2003, the court entered a Final Judgment and Decree of Dissolution and Property Settlement. Wife subsequently filed a motion to amend the judgment, alleging that the court failed to specify the marital and separate property of the parties. On April 14, 2003, the court entered a Final Judgment and Decree of Dissolution and Property Settlement Nunc Pro Tunc.

The trial court awarded Husband the home (that he acquired prior to the marriage) as separate property and assigned him any remaining debt on the property. The court, nevertheless, found that the home had a marital component in the sum of $6,665.00. The trial court awarded Wife $15,743.79 in marital property and assigned her $5,000 in marital debt, for a net value of $10,743.79. The trial court awarded Husband $47,032.79 in marital property. The court also ordered Husband to pay Wife $10,000 "to equalize the division." Thus, Husband was awarded $37,032.79 (or 64%) of the marital property, while Wife was awarded $20,743.79 (or 36%) of the marital property.

Wife appeals.

### Analysis

*Murphy v. Carron* governs our review of a court-tried dissolution case. 536 S.W.2d 30 (Mo. banc 1976). We must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares the law. *Belcher v. Belcher*, 106 S.W.3d 601, 602 (Mo. App.2003). We view the evidence in the light most favorable to the decree, disregarding contrary evidence and deferring to the trial court even if the evidence could support a different conclusion. *Carter v. Carter*, 869 S.W.2d 822, 830 (Mo.App.1994).

Section 452.330 [1] mandates a two-step process for the court's distribution of property. The court must (1) set aside to each spouse his or her non-marital property and (2) divide the marital property and debts in such proportions as it deems just considering all relevant factors. § 452.330.1; *see also Jinks v. Jinks*, 120 S.W.3d 301, 306 (Mo.App.2003). The trial court's division is presumed correct, and the challenging party bears the burden of overcoming this presumption. *Taylor v. Taylor*, 25 S.W.3d 634, 639 (Mo.App.2000).

### Point I: Marital Component of the Home

■ In her first point on appeal, Wife argues that the trial court erred in calculating the marital component of the family residence owned by Husband.

■ During the marriage, the parties resided in a home that Husband had purchased (subject to a mortgage) prior to the marriage. After the parties married, title remained in Husband's name only. Generally, property acquired by a spouse prior to marriage is that spouse's separate property upon dissolution. *McKown v. McKown*, 108 S.W.3d 180, 183 (Mo.App.

1. All statutory references are to Revised Statutes of Missouri (2000).

2003). However, an increase in the value of separate property can constitute marital property to the extent that marital assets contributed to such an increase. § 452.330.2(5). The parties agree that two mortgage payments of $10,350.00 were made out of marital funds. Because marital funds contributed to an increase in equity in the property, the court properly granted the marital estate an interest in the property. *See McKown,* 108 S.W.3d at 185 (*citing R.D. v. J.D.,* 764 S.W.2d 744, 746 (Mo.App.1989)).

In determining the marital component of the property, the court looked at the equity value attributable to all mortgage payments made from the time of purchase. It divided that figure ($16,361.00) by the number of months that Husband occupied the property (54). This figure of $302.98, according to the court, constitutes the "equity value per month." In order to calculate the marital portion of that value, the court then multiplied $302.98 by the number of months that the couple spent married (22, according to the court). Thus, the court found that the marital component of the home was $6,665.00.

Wife contends that the court should have used the method she suggested at trial. Wife testified that of the two payments made out of marital funds, around $13,509.00 constituted principal and around $7,191.00 constituted interest. The principal, Wife claims, represents the marital component of the home. At trial, Husband testified that the increase in the equity value from the date of purchase to the present time (or 54 months) equals $16,361.00. The court apparently relied on Husband's figures to calculate the marital interest in the home.

Wife cites no authority that compels the court to look at the principal paid out of marital funds in determining the marital component of the property. Instead, Wife

essentially contends that her employment as an accountant validates her suggestion. Neither party, however, presented any evidence as to the actual value of the home. Husband and Wife merely presented different methods for calculating the marital interest in the home. The trial court has broad discretion in classifying property. *Runge v. Runge,* 103 S.W.3d 804, 808 (Mo. App.2003). Neither of the methods proposed to the court was unassailably valid, and neither was completely absurd. The court was given two imperfect options. The court was free to accept Husband's proposed method of valuation and to reject Wife's method. *Crews v. Crews,* 949 S.W.2d 659, 665 (Mo.App.1997). Thus, we cannot say that the court abused its discretion here by looking at the "equity value" acquired during the marriage.

■ Wife further argues that even if we uphold the court's formula, its calculation based on that formula is incorrect. Wife contends that the duration of the marriage was 30 months, not 22 months. Husband concedes Wife's point. Moreover, the record supports Wife's contention, as it reflects that the parties were married from June 17, 2000, through December 26, 2002. The court may have inadvertently used April 12, 2002 (the date on which the parties separated), or May 1, 2002 (the date on which Husband filed his petition for dissolution), as the date of dissolution. In any event, the marriage was dissolved when the court issued its decree on December 26, 2002. Therefore, the parties were married 30 months.

While Husband concedes this point, he argues that the increase of 8 months should also be reflected in the amount of time that he occupied the property. We agree. The court incorrectly found that 54 months elapsed between the date of purchase and the date of dissolution. The record reflects that Husband purchased

the property on June 15, 1998, while the marriage was dissolved on December 26, 2002. The correct figure, therefore, is 62 months.

The trial court erred in using 22 months as the duration of the marriage and 54 months as the amount of time in which Husband occupied the property. Instead, the court should have used 30 months and 62 months respectively. Thus, the court erred in finding that $6,665.00 is the marital component of the home. We remand and direct the court to recalculate this value accordingly and amend the judgment to the degree necessary.

### Point II: Stored Grain

■ In her second point on appeal, Wife argues that the court erred in failing to designate the value of grain from the farming operations conducted by Husband as marital property.

At trial, Wife introduced a hand-written document dated December 2001 that she described in her testimony:

A. This is a document that's been provided by Brenda, Troy's mom. She's the one that kept track of how many bushels of bean[s] or corn[ ] that we had and what we've sold and what we hadn't sold. I mean it's a document that Troy would have brought home for me.

Q. Okay.

A. I mean for our records, to know. I did not keep track of what bushels he had in storage or what he sold.

Q. All right. And this is a breakdown ... I guess what Troy had stored for the 2001 crop; is that your understanding?

A. Yes.

This document showed 35,346 bushels of corn and 11,687 bushels of soybeans that had not yet been sold at that time. Wife testified that upon receiving the list, Husband would not have sold any grain in 2001. Rather, he "would have waited until 2002 to sell it when the prices were better." Wife testified that the fair market value of the corn at the time of trial was $81,649.00, while the fair market value of the soybeans was $65,209.00. According to Wife, therefore, the total value of the grain was $146,858.00.

Wife points out that Husband testified that in February 2002 he purchased a semi-tractor (valued at $25,000) in exchange for grain. Wife also points out that Husband testified that his mother typically provided the parties with a summary of the crops at the end of the year because he "always had to sell grain" to make the mortgage payment at that time. This payment was $10,350.00. Husband also testified that he paid off an operating loan of around $30,000.00 in April 2002.

Wife contends that these three transactions—the tractor purchase, the mortgage payment, and the loan payment—were funded by the proceeds of the 2001 grain. According to Wife, Husband did not account for the remaining funds obtained from grain sales. Based on the fair market value of the grain that she provided to the court ($146,858.00), Wife alleges that the remaining proceeds total $81,508.00. Wife contends that the trial court erred in failing to identify this figure as marital property. We disagree.

The trial court found that the farming operation produced "insignificant income, if any." The record supports this finding. At trial, Wife introduced into evidence the parties' 2001 income tax return. Schedule F listed the gross income from Husband's farming operations as $72,830.00 and the expenses as $82,001.00. Thus, Schedule F listed a net farming loss of $9,171.00. Husband testified that in 2002, these losses would rise to at least $15,000.00. The document written by Husband's mother

that Wife cites does not indicate any expenses associated with the 2001 harvest. Nor does the fair market value of the crops listed necessarily equal the amount of income that those crops produced. Arguably, the record reflects that these crops, in light of the farming expenses, produced no income. Husband testified that "all the funds for 2001 were spent on the expenses and I still lost [money]." In any event, the record is simply too murky to conclude that Husband ended up rolling in cash, which he secreted, and thus failed to account for.

Wife also fails to cite any authority that compels the trial court to include the value of the 2001 crops in its division of marital property. Generally, a trial court cannot include the value of a marital asset that no longer exists in it division of marital property. *Conrad v. Conrad*, 76 S.W.3d 305, 314 (Mo.App.2002). A trial court, however, may include the value of such an asset in its division if it believes that the marital asset was squandered. *Stratman v. Stratman*, 948 S.W.2d 230, 239 (Mo.App.1997). Here, Wife fails to show that Husband squandered or misused any income he may have received from the sale of the 2001 crops.

The trial court's refusal to designate any portion of the value of the 2001 crops as marital property is supported by the record. Point denied.

### Point III: Unequal Division of Marital Property

■ In her final point on appeal, Wife argues that the trial court erred in awarding Husband 64% of the marital property. This division, Wife complains, is inequitable. Wife points out that the division must be substantially equal unless at least one factor in section 452.330 or one non-statutory factor makes such a division unjust.

No such factor exists here, according to Wife. We agree.

The trial court awarded Wife $15,743.79 in marital property and assigned her $5,000.00 in marital debt, for a net value of $10,743.79. The trial court awarded Husband $47,032.79 in marital property. The court also ordered Husband to pay Wife $10,000.00 "to equalize the division." Thus, Husband was awarded $37,032.79 (or 64%) of the marital property, while Wife was awarded $20,743.79 (or 36%) of the marital property. The parties stipulate to these figures.

In challenging the trial court's division of marital property, Wife has the burden of overcoming the presumption that the division is correct. *Taylor*, 25 S.W.3d at 639. The court's division must be fair and equitable given the circumstances of the case, but it need not be equal. *Jinks*, 120 S.W.3d at 306. Section 452.330.1 requires the court to consider all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during marriage; and

(5) Custodial arrangements for minor children.

In evaluating these statutory factors, the court need not follow a specific formula. *Laffey v. Laffey*, 4 S.W.3d 655, 659 (Mo. App.1999). Instead, it is free to attach any

amount of weight to them it deems appropriate. *Taylor*, 25 S.W.3d at 641. We will not substitute our judgment for that of the trial court if it is supported by credible evidence. *Nelson v. Nelson*, 25 S.W.3d 511, 518 (Mo.App.2000).

In this case, the record does not contain sufficient evidence to support the court's disproportionate division. There was evidence that Wife was in a position to take advantage of Husband financially. Wife had a degree in accounting. After the parties' marriage, each became a co-signor on the other's checking account. Wife testified that she handled the finances because Husband "had [no] interest in it." Wife also testified that she used Husband's checking account to pay the marital expenses, while she reserved her account "for whatever [she] felt like purchasing." Husband testified that Wife often used his checking account, which contained only those funds obtained from his farming, to pay her credit card bills. Husband, however, failed to show that this was a violation of marital trust. He did not testify that she ever lied to him about the finances, nor did he testify that she cheated him. He completely failed to use documentation to demonstrate financial improprieties. Moreover, we are not talking here about Wife's actions during a separation, but about Wife's handling of finances throughout the marriage. Surely, if Wife were guilty of such profound financial misconduct, evidence could have been produced by husband showing that she had drained off assets for her separate purposes. His failure to produce such evidence is not without significance. Despite Wife's apparent control of the finances, the record does not establish that Wife systematically or substantially manipulated the finances for her own gain.

Husband implies that there was something improper in the fact that Wife purchased "Longaberger" baskets through a dealer for her friends, who reimbursed her for the cost. It appears that several of these orders were credit card transactions. Wife testified that she either kept the money she received from her friends or deposited it into her checking account. Husband fails to show that these transactions were nefarious. Around the same time (from October 2001 through April 2002), Wife wrote several checks from her account to her parents. Wife explained that she was paying back her parents the money they loaned to her earlier so that she could buy a sofa table and pay off her medical bills. This testimony was not contradicted in any way. In view of the discovery tools available to Husband, we view the lack of contradiction, once again, as significant.

Husband also complains that shortly after the parties separated, Wife returned to the couple's home with her family and removed many items belonging to the couple. Husband apparently did not know they would be coming. Husband testified that they took "everything." Wife, on the other hand, testified that she took items (including furniture and a computer) together valued at $2,500, but left Husband items (including an entertainment center and television, a pool table, and a refrigerator) valued at $4,500.00. The court apparently believed Wife's version. It found that Wife "removed" goods valued at $2,500.00, and awarded these goods to her. The court also awarded Husband those goods he already had in his possession, which the court valued at $4,500.00.

■ Section 452.330(4) authorizes the trial court to consider the conduct of the parties in its division of property. *McIntosh v. McIntosh*, 41 S.W.3d 60 (Mo.App. 2001). Marital misconduct may justify a disproportionate division when the offending conduct places a burden on the mar-

riage or on the other spouse. *See id.* at 70. In this case, the trial court did not make a specific finding of Wife's misconduct. We presume that it considered all the evidence. *Baker v. Baker*, 986 S.W.2d 950, 957 (Mo.App.1999). This includes any testimony of Wife's control of the finances during the marriage and her behavior after the parties separated. The trial court had discretion to believe or disbelieve any portion of this testimony. *Laffey*, 4 S.W.3d at 658. At trial, Husband made no pointed or precise allegation of financial misconduct. Husband's assertions of misconduct are made on appeal in order to attempt to justify the disproportionate division, but Husband failed to do more than make vague and general insinuations at trial.

We conclude that, without a court finding of misconduct, any evidence of misconduct here was simply too weak to warrant a substantially disproportionate division. Though Wife removed some items from the family home without notice to Husband, this conduct was not egregious and did not contribute to the breakdown of the marriage. Nor did the evidence of Wife's financial activities establish that she engaged in significant affirmative misconduct, as Husband implies. The record indicates that Wife had the *opportunity* to gain financially from the relationship. Nonetheless, it fails to establish that Wife (1) unfairly benefited to any significant degree from her control of the finances, (2) purposely orchestrated a scheme in which friends would reimburse her for basket purchases so that Wife could cheat Husband out of significant marital funds, or (3) improperly siphoned off marital funds to her parents. Such allegations rely on insinuation and innuendo rather than facts.

The 64/36 split here is more disparate than we have seen approved without something substantial to justify it. *See, e.g., In re Marriage of Woodson*, 92 S.W.3d 780, 785 (Mo. banc 2003) (upholding a 60/40 split under the particular facts of that case). Although the trial court has great flexibility and discretion in dividing property, *Cohen v. Cohen*, 73 S.W.3d 39, 53 (Mo.App.2002), without substantial evidence that would justify disproportionality, we conclude that the division in this case constitutes an abuse of discretion. We vacate and remand and direct the court to amend the judgment by requiring an additional cash payment from Husband to Wife, or to make other adjustment of the distribution, in order to provide for a more fair and equitable division of property. This distribution need not be equal, but must be fair and equitable under the circumstances.

### Conclusion

For the foregoing reasons, we reverse the portion of the judgment dividing the marital property. We remand for recalculation of the marital component of the residence in question and for recalculation of the division of property in a manner consistent with this opinion. We affirm the judgment in all other respects.

HOLLIGER and ULRICH, JJ., concur.