**Laurie HART, Respondent,**

v.

**Mark HART, Appellant.**

**No. WD 66278.**

Missouri Court of Appeals,
Western District.

Jan. 9, 2007.

---

Robert E. Arnold, III, Kansas City, MO, for appellant.

Brent L. Winterberg, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, ROBERT G. ULRICH, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

Mark Hart ("Husband") appeals from a judgment entered in the Circuit Court of Clay County dissolving his marriage to Laurie Hart ("Wife"). Specifically, Husband challenges the trial court's division of marital property, award of child support, entry of an order regarding payment of the children's post-secondary educational expenses, and award of attorney fees to Wife. For the following reasons, we affirm.

The parties were married on August 5, 1983. Three children were born of the marriage: Kate Hart ("Kate"), born November 14, 1984; Deirdre Hart ("Deirdre"), born November 4, 1986; and Emily Hart ("Emily"), born June 18, 1989. Husband moved to Indiana for employment reasons in the summer of 2003, and Wife stayed in Missouri with the three children, planning to join him later. Husband filed a petition for dissolution of marriage in the State of Indiana on May 17, 2004, which he dismissed on June 4, 2004. The couple formally separated on or about May 22, 2004. Wife filed her petition for dissolution of marriage in the Circuit Court of Clay County on July 12, 2004. Husband entered his appearance on August 6, 2004, and did not immediately retain counsel. The parties executed a Marital Settlement

and Separation Agreement ("the Agreement") on October 15, 2004, and filed the Agreement with the court on December 2, 2004. Before the hearing on final disposition could take place, Husband retained counsel and filed a formal rescission of the Agreement with the court. Wife filed a motion to enforce the Agreement, which was denied, and the case was set for trial. Husband filed his Answer and separate Counter–Petition, with leave of court, on February 8, 2005.

The case was tried on August 22, 2005. On November 2, 2005, the trial court entered a judgment and decree dissolving the marriage. In its judgment, the trial court divided the marital property, set aside Wife's non-teacher retirement fund to her as non-marital property, found that both of the parties' Form 14 calculations were rebutted as unjust and inappropriate, awarded Wife $1,500 per month in child support, entered a separate order requiring Husband to pay 66% of the post-secondary educational expenses for each of the children, and awarded Wife attorney fees in the amount of $5,000. This appeal follows.

■ This Court reviews a judgment in a dissolution proceeding under the same standard applicable to any other court-tried case. *Foraker v. Foraker*, 133 S.W.3d 84, 92 (Mo.App. W.D.2004). "The judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Id.* (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). In making these determinations, this Court views the evidence and all reasonable inferences drawn in the light most favorable to the judgment and disregards all other evidence and contrary inferences. *Preston v. Preston*, 189 S.W.3d 685, 687 (Mo.App. W.D.2006). This Court defers to the trial court's deter-

minations regarding witness credibility. *Foraker*, 133 S.W.3d at 92. Our primary concern when reviewing a court-tried case is with the correctness of the result, not the route by which the trial court reached that result. *Eckhoff v. Eckhoff*, 71 S.W.3d 619, 622 (Mo.App. W.D.2002) (citing *Business Men's Assurance Co. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999)). We will affirm the judgment if it is "cognizable under any theory," even if the reasons advanced by the trial court are incorrect or insufficient. *Id.*

■ Appellant's first two points deal with the division of property. A trial court has broad discretion in identifying and dividing marital property, and this Court will reverse only if the division is so unduly weighted in favor of one party that it constitutes an abuse of discretion. *Travis v. Travis*, 163 S.W.3d 43, 46 (Mo.App. W.D.2005). Applying the overall standard of review, we must first determine if the trial court's decision passes the *Murphy v. Carron* standard, listed above, and then review for abuse of discretion. *Nelson v. Nelson*, 195 S.W.3d 502, 506 (Mo.App. W.D.2006). An appellate court presumes that a trial court's division of property is correct, and the party challenging the division bears the burden of overcoming that presumption. *Id.* We presume that the trial court considered all of the evidence in dividing marital property. *Milne v. Milne*, 138 S.W.3d 162, 169 (Mo.App. W.D. 2004).

■ A trial court must follow a two-step procedure in dividing the property in a dissolution proceeding: first, it must set apart to each spouse their non-marital property and, second, it must divide the marital property and debts in such proportions as the court deems just after considering all relevant factors. *Selby v. Selby*, 149 S.W.3d 472, 482–83 (Mo. App. W.D.2004).

Section 452.330.1 provides, in pertinent part, that in fashioning a fair and equitable division of marital property, the trial court is required to consider all relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

The five statutory factors of § 452.330.1 are not exclusive, and there is no formula determining the weight to be given to the factors in dividing the marital property.

*Nelson*, 195 S.W.3d at 507 (citing § 452.330.1 R.S.Mo.). The division of property does not necessarily need to be equal, but it must be fair and equitable under the circumstances of the case. *Travis*, 163 S.W.3d at 46. The trial court must follow two guiding principals inherent in § 452.330: "(1) that property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and (2) that property division should be utilized as a means of providing future support for an economically dependent spouse." *Cohen v. Cohen*, 73 S.W.3d 39, 54 (Mo.App. W.D.2002).

In his first point, Appellant alleges that the trial court erroneously applied the law when it awarded a disproportionate amount of the marital property to Wife because it (a) failed to take into account the value of Wife's non-teacher retirement fund, and (b) failed to set aside non-marital property before dividing marital property. Wife was awarded approximately 53% ($307,736.50 / $575,989) and Husband was awarded approximately 47% ($268,252.50 / $575,989) of the marital estate.[1] Wife's non-teacher retirement account was valued at $84,000 and was awarded separately to Wife as non-marital property.

The plain language of the judgment states that the trial court did take into account the value of Wife's non-teacher retirement fund before dividing the property:

The non-teacher retirement fund in the name of Mrs. Hart, the Petitioner, is not divisible by qualified domestic relations order. The Court finds that it should be set over to Petitioner. *The Court is mindful that it should consider this asset in its division of the parties' other property and the Court has carefully considered its division of property.* The Court finds that considering Respondent's marital misconduct and the Petitioner's waiver of maintenance in a long-term marriage with a large discrepancy

1. The judgment states the percentages as 57% ($166,532 / $293,580) to Wife and 43% ($127,048 / $293,580) to Husband. This breakdown includes only "the real and personal property and assets of the parties." It excludes Husband's three retirement accounts (valued at $215,746) and Wife's ING retirement fund (valued at $66,663), which were divided equally between the parties at $141,204.50 each and have been included in our percentage calculations. The only marital debt was the mortgage on the real estate awarded to Husband, which was incorporated into the property award. Therefore, the actual percentage distribution of the marital estate is weighted less in Wife's favor than stated in the judgment.

in incomes, that it is appropriate to award the non-teacher retirement account to Petitioner.

(Emphasis added.) In addition to the plain language of the judgment, we presume that the trial court considered all of the evidence in dividing marital property. *Milne*, 138 S.W.3d at 169. Husband's assertion that the trial court determined that "Wife's separate property should be given no consideration," based on the language listed above, is clearly an incorrect reading of that language.

Husband's contention that the trial court failed to follow the proper order in dividing marital and non-marital property appears to focus on the order of the language of the judgment itself. Wife's non-teacher retirement account is the only non-marital property identified by the parties. Husband relies on the fact that the trial court's discussion of its treatment of the non-teacher retirement fund appears after its listing of marital property awarded to Wife in the judgment. Section 452.330.1 imposes no requirements on the order of the language of the judgment itself, as long as the trial court follows the proper procedure in arriving at that judgment. We presume that the trial court's division of property is correct, and the party challenging the division bears the burden of overcoming that presumption. *Nelson*, 195 S.W.3d at 506.[2] Husband fails to meet his burden of overcoming the presumptions in favor of the trial court's decision regarding division of property and Wife's non-teacher retirement fund, especially in light of the trial court's statements reflecting that it did indeed consider the non-teacher retirement fund in dividing the marital property. We find no abuse of discretion in either case. Point I is denied.

■ For his second point of error, Appellant alleges that the trial court erroneously applied the law when it awarded a disproportionate amount of the marital property to Wife because it (a) improperly used Husband's alleged marital misconduct as a basis for awarding a larger portion to Wife, and (b) improperly used Wife's waiver of maintenance as a basis for awarding a larger portion to Wife.

■ "Generally, the division of marital property should be substantially equal unless one or more statutory or non-statutory factors causes such a division to be unjust." *Kolar v. Kolar*, 114 S.W.3d 440, 444–45 (Mo.App. W.D.2003) (internal quotation omitted). Although marital misconduct may not be used to punish a party when dividing marital property, it is a factor in property division when the misconduct places extra burdens on the other spouse such that the other spouse must assume a greater share of the partnership load. *Id.* at 445. The added burden "does not have to be a financial one." *Id.* Taking the evidence in the light most favorable to the decree, there is sufficient evidence to support a finding that Husband engaged in misconduct during the marriage, sexual or otherwise, sufficient to warrant a disproportionate award of property in favor of Wife, as is discussed below.

Husband concedes that he was engaged in a relationship with a co-worker but argues that it did not affect the marriage because (a) he did not begin the affair until well after he received Wife's petition for dissolution, and (b) there were no added burdens placed upon Wife.

Husband testified that the co-worker moved in with him around August 2004

---

**2.** We note also that Husband's attorney jointly prepared and approved the judgment as to form, so it is reasonable to expect that any objections to the language of the judgment would have been addressed at that time.

after having divorced from her husband in May 2004, which was about the same time Husband filed for divorce in Indiana. Husband claims that the living situation did not evolve into a relationship until November 2004. On the other hand, Wife testified that although she was not aware of the affair until Husband filed for divorce, in hindsight, there was evidence of an affair before the petitions were filed. She testified that there were numerous telephone conversations to and from Husband and the co-worker from his home phone and on evenings and weekends in December 2003 and January 2004, some while Wife and the children were visiting Husband for the holidays.

■ "The trial court is free to disbelieve the testimony of any witness"; great deference is shown "to the trial court's ability to draw conclusions and to weigh the credibility of witnesses, their sincerity, and character." *Word v. Peterson*, 57 S.W.3d 894, 902 (Mo.App. W.D.2001) (internal quotation omitted). The trial court was free to find Husband's testimony about the timing of his affair not credible and to reject that testimony. Moreover, even if the affair did not begin until after the parties were separated, it may still be considered "conduct during the marriage" for the purpose of dividing property. *In re Marriage of Chorum*, 959 S.W.2d 900, 906 (Mo.App. S.D.1997).

Because neither of the parties requested specific findings prior to the introduction of evidence under Rule 73.01(c),[3] the trial court was not required to detail the reasoning behind its conclusion of marital misconduct on the part of Husband. Pursuant to Rule 73.01, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in

accordance with the result reached." *Rule 73.01(c)*. The fact that a trial court mentions one spouse's misconduct in its decree dividing marital property, in conjunction with other factors, does not indicate that it improperly gave any more weight to such misconduct than any other relevant factor in dividing the marital property. *Griffin v. Griffin*, 986 S.W.2d 534, 537 (Mo.App. W.D.1999). The trial court refers to the length of the marriage and the large discrepancy in incomes, in addition to Husband's marital misconduct and Wife's waiver of maintenance, in arriving at its division of property.

In addition, the trial court may have considered issues other than marital infidelity in determining marital misconduct, such as whether Husband contributed to the support of the children and the marital home. *See Anderson v. Anderson*, 656 S.W.2d 826, 828 (Mo.App. E.D.1983) (failure of husband to support family subsequent to separation and prior to dissolution of marriage constituted marital misconduct and should have been considered in dividing marital property of parties since it favored a greater award of marital property to wife). Husband admitted that he did not contribute toward any of the expenses for the children's medical expenses, extracurricular activities, or college expenses after the separation, although he knew of the children's involvement in these activities. Wife testified that Husband "said those are up to you" when she sent him bills for medical, dental, and college expenses for the children, and that the few conversations they had about those expenses during the divorce proceedings "ended up in shouting matches." The trial court was free to disbelieve Husband's testimony that Wife

---

**3.** Husband submitted a motion for leave to file a request for findings of facts and conclusions of law, but he did not do so before

evidence was introduced, and the trial court was free to deny his request.

never sent him any invoices for college expenses or asked him to contribute towards those expenses. Husband testified that he believes Wife should be 100% responsible for any extracurricular activities and medical expenses using the basic child support payments. Despite this professed belief, Husband does not claim any error in the trial court's award of a substantial amount to Wife for past medical expenses ($1,317.00) and past college expenses ($5,807.00, after applying a $4,000.00 credit from a joint IRS refund that was being held by Wife pending the judgment, or $9,807.00 total value) that were not paid by Husband. The record supports a finding that Husband failed to contribute to the support of the children, which would support a finding of marital misconduct in and of itself.

■ There was clearly sufficient evidence to support a finding of marital misconduct. The controlling question then becomes whether Husband's misconduct caused extra burdens to be placed upon Wife. *Kolar*, 114 S.W.3d at 445. Husband's girlfriend has lived with him since August 2004 without contributing to the mortgage or utility payments, and he has taken her on trips "to visit the family." In addition to assuming these costs, it is reasonable to infer that Husband may have supported his girlfriend in other ways as well, thus diverting funds that could have been used to pay for the children's expenses and adding to Wife's burdens. *See McNair v. McNair*, 987 S.W.2d 4, 7 (Mo.App. W.D.1998) (sufficient additional burdens imposed on Wife to support disproportionate award of property where husband lived with girlfriend during separation and paid for rent, utilities and phone bills, took girlfriend on trips, and gave her gifts while wife incurred expenses maintaining the marital household). There was little communication between Husband and Wife about the raising of the children during the separation, and Husband failed to contribute to the support of the children. Wife was obligated to cover the children's medical and educational expenses on her own or arrange for some other form of payment for the expenses. These added burdens resulted in Wife assuming more of the responsibility for raising the children, such that it was not an abuse of discretion to award Wife a disproportionate amount of the property. *See D.K.L. v. L.C.L.*, 764 S.W.2d 664, 667 (Mo.App. E.D.1988) (sufficient added burdens due to wife's misconduct found where child was left with husband, husband was completely responsible for the care of the child and received little assistance from wife). The record does not establish that the trial court placed an inappropriate amount of weight on Husband's misconduct in dividing the marital property.

■ Appellant's second argument, that the trial court improperly used Wife's waiver of maintenance as a basis for awarding a larger portion of the marital estate to Wife, is entirely without merit. Husband's contention that Wife's waiver of maintenance is invalid has no support in the case law. Husband cites no authority for the proposition that a valid waiver requires an independent finding that the spouse asserting the waiver has a right to receive maintenance, and our independent research has revealed none.

The trial court was free to consider the fact that Wife would not be receiving maintenance in its determination of the appropriate division of property. *See Foraker*, 133 S.W.3d at 107 (finding unequal division of property in favor of wife is just and equitable where there was long-term marriage, significant disparity in incomes, misconduct by husband, and no maintenance awarded to wife due to sufficient

award of marital property to provide for wife's needs).

The trial court has broad discretion dividing property in a dissolution proceeding, and it will be reversed on appeal only "if the division is so unduly weighted in favor of one party that it constitutes an abuse of discretion." *Travis*, 163 S.W.3d at 46. A 53%–47% split of the marital property in favor of Wife is not so weighted in favor of Wife as to constitute an abuse of discretion under these circumstances. The Supreme Court has held repeatedly that a 60%–40% split in the marital estate, which is wider than the gap here, does not violate *Murphy v. Carron*, nor is so one-sided as to be an abuse of discretion. *See In re Marriage of Woodson*, 92 S.W.3d 780, 785 (Mo. banc 2003) (citing *Silcox v. Silcox*, 6 S.W.3d 899, 904 (Mo. banc 1999); *Rombach v. Rombach*, 867 S.W.2d 500, 505 (Mo. banc 1993); and *Mehra v. Mehra*, 819 S.W.2d 351, 357 (Mo. banc 1991)). Point II is denied.

■ Appellant alleges in his third point on appeal that the trial court abused its discretion in finding that the Form 14 presumed child support amount ("PCSA") was rebutted due to the children's educational expenses and also entering a separate order requiring Husband to pay 66% of the children's post-secondary educational expenses, claiming that the two orders cover identical expenses.

"In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997). In the first step, the trial court must determine and find for the record the PCSA in accordance with Form 14. This required determination and finding can be done by the trial court's either accepting for the record a Form 14 calculation of one of the parties, or in the event the court "rejects" their Form 14 calculations as being incorrect, by doing its own Form 14 calculation. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record or by articulating on the record how it calculated its Form 14 amount. In the second step, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate. Our review then of an award of child support is essentially one of the trial court's application of the two-step *Woolridge* procedure, applying the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Hence, in reviewing an award of child support, we review the award, in light of the trial court's application of the *Woolridge* procedure, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation."

*Peniston v. Peniston*, 161 S.W.3d 428, 433 (Mo.App. W.D.2005) (quoting *Conrad v. Conrad*, 76 S.W.3d 305, 308 (Mo.App.2002) (footnotes and internal citations omitted)). Husband does not claim that the trial court erred in awarding a higher amount of child support than the PCSA or in requiring him to pay for a higher portion of the children's post-secondary educational expenses. Instead, Husband focuses his claim on the procedure used by the trial

court, claiming that the entry of two separate awards resulted in a redundancy of payments regarding educational expenses.

This court recently summarized the options for treatment of post-secondary educational expenses in a child support award in *Renaut v. Kullman,* 152 S.W.3d 431, 436 (Mo.App. W.D.2005):

> [C]ollege expenses (1) are *not* included in the schedule of basic child support obligations under Form 14; and (2) may, at the trial court's discretion, be separately stated and awarded in lieu of including them in the Form 14 calculation or rebutting the Form 14 PCSA.... [A] trial court may order the parent to pay both the presumed child support amount and a portion of the extraordinary post-secondary educational expenses if the trial court determines, in its discretion, that such an award is appropriate based upon all relevant factors, including the financial needs and resources of the parents and the children, subject only to the proviso that the child support award in such situations must not include a redundancy in the children's living expenses already, and must otherwise be just and reasonable.

*Id.* (internal citations and quotations omitted). Husband appears to argue that the trial court should have either (1) awarded the PCSA without including educational expenses and entered a separate order for post-secondary educational expenses, *or* (2) rebutted the PCSA and adjusted it to include all of the post-secondary educational expenses instead of entering an additional order regarding those expenses. He contends that the trial court erred in rebutting the PCSA *and* entering a separate order. Husband does not claim that the court erred in requiring him to pay for a higher percentage of the children's post-educational expenses than Wife, but rather that the procedure used by the court in

effecting this division of responsibility was erroneous and an abuse of discretion because it resulted in him paying for the same expenses twice.

This Court first addressed the possibility of entering a separate order for college expenses in *Ricklefs v. Ricklefs,* 39 S.W.3d 865 (Mo.App. W.D.2001). We established that the October 1, 1998 changes in the Form 14 logically allow for the entry of a separate order for payment of a portion of college expenses as an alternative "in lieu of" including post-secondary expenses in the calculation of the PCSA or a rebuttal thereof. *Id.* at 878. " 'A finding by the court ... that the presumed child support amount is unjust or inappropriate *is not necessary* where the parent obligated to pay support is also ordered to pay any percentage of the other extraordinary child-rearing costs of the children who are the subject of the proceeding.' " *Id.* at 877–78 (quoting Civil Procedure Form 14, COMMENTS, Line 6e, Comment A (October 1, 1998)) (emphasis added). Entry of an award for both the presumed child support amount and a portion of the post-secondary educational expenses "must not include a redundancy in the children's living expenses already, and must otherwise be just and reasonable." *Foraker,* 133 S.W.3d at 98.

There are a number of cases that have addressed the situation where there was an *acceptance* of the presumed child support amount and a separate order for a percentage of the college expenses. However, we have been unable to find any cases like the one *sub judice,* where there was a *rebuttal* of the PCSA and a separate order for a percentage of the college expenses.

*Ricklefs* makes it clear that a trial court is not *required* to rebut the PCSA in order to enter a separate order for college expenses. It does not address whether a

court is *allowed* to enter a separate order if it decides to rebut the PCSA as being unjust and inappropriate and adjusts the child support award accordingly. However-er, *Foraker* teaches that the primary concern in reconciling the entry of an award for the PCSA and a separate award for post-secondary educational expenses is to avoid any redundancy. 133 S.W.3d at 98. Inferentially then, *Foraker* stands for the proposition that it doesn't matter whether the trial court accepts the presumed child support amount or rebuts it and adjusts accordingly, it is free to enter a separate award for post-secondary educational expenses so long as it avoids a "redundancy in the children's living expenses" and is otherwise just and reasonable. *Id.* Husband places too much emphasis on whether the primary award of child support is the result of an adoption of the PCSA or a rebuttal thereof. Husband's contention is one of form over substance. We will, therefore, review the trial court's rebuttal of the PCSA and entry of a separate order for redundancy to determine if there was an abuse of discretion.

At the time of the judgment, the oldest child, Kate, was in her senior year at University of Missouri, Columbia, and maintained a separate residence with support from Wife. She planned to attend medical school after finishing college. Deirdre was about to start her first year of a college medical school program at University of Missouri, Kansas City, where she would attend year-round for six years. She still resided with Wife for the time being, but she planned to live in a college dormitory in the future. Emily, the youngest child, was in her junior year of high school. Since Husband moved to Indiana in the summer of 2003 for his job, Emily and Deirdre resided at all times with Wife, except for a few weekends when the children visited Husband in Indiana.

Wife's monthly gross income is $4,681.00, and Husband's monthly gross income is $8,310.00. Husband and Wife each submitted a Form 14, calculating the presumed child support amount for three children as $908 and $1,468 per month, respectively.[4] The trial court assigned Husband's proportionate share of the PCSA as 66% and Wife's at 34%. Neither of the parties' Form 14 calculations takes into account any educational expenses for the three children.

The judgment contains two components regarding child support. First, the court set Husband's combined monthly child support payment for the three children at $1,500.00 per month, commencing on September 1, 2005. The record shows that the trial court arrived at this figure by rebutting the PCSA's shown by each of the parties' Form 14 calculations as unjust and inappropriate because the children's educational expenses were not included and adjusting the amount awarded according-ly.[5] Second, the court also ordered Hus-

---

**4.** Husband's Form 14 is not in the record, so our analysis of its contents is based solely on his testimony. We are unable to determine how he arrived at the PCSA of $908 based on the information provided, but the trial court does not appear to have accepted these calculations. Wife submitted three separate Form 14 calculations throughout the proceedings, but the judgment refers only to her original calculations submitted on December 2, 2004.

**5.** It appears that the court rejected each of the parties' calculations and calculated its own Form 14 off the record, then rebutted all of the PCSA's. The judgment articulates the amounts used in the Form 14 calculations as follows: incomes of $4,681 to Wife and $8,310 to Husband (as calculated by Wife) and health insurance costs of $230 (as stated by Husband). The court adopted Wife's calculation of the parties' incomes, but it did not adopt her calculation of the percentage split as being 36/64. The trial court repeatedly refers to the Form 14 percentage as being 34% to Wife and 66% to Husband in the

band to pay 66% ("per the Form 14 percentage") of the cost each year for each child's post-secondary education, not including room and board or transportation, which are to be paid by Wife, and subject to certain additional limitations and expense caps not at issue here.

Wife testified extensively as to the educational expenses of the children.[6] Kate's expenses are approximately $22,624 per year for tuition, books, housing, food, and necessities. Her tuition is $13,324 and books are $900, after approximately $3,500 in scholarships. Kate's housing, food, and necessities are $900 per month, and these expenses are year-round because of Kate's work, internships, etc. Kate contributes $200 per month toward the latter amount from her part-time job, and Wife pays $700 per month to Kate in a lump sum, for a total of $8,400 per year.

Deirdre's expenses for the first year are approximately $18,501 for tuition, before scholarships. Wife partially paid this amount but was not sure of the total portion she will end up paying because some of Deirdre's scholarship applications were still outstanding, and some of them will be distributed in different semesters. Wife testified that she believes there will be allowance expenses because Deirdre won't be able to work while in school. There

were currently no housing expenses for Deirdre because she was staying at home, although she anticipated dormitory expenses later. Wife estimated that her future expenses for the two children in college would be approximately $2,000 per month for school and books.

The trial court properly specified that it had considered all relevant factors and that the PCSA was rebutted as unjust and inappropriate due to "the children's educational expenses." Because neither of the parties filed a timely request under Rule 73.01(c), the court was not required to further specify the factors for its rebuttal. *See Rule 88.01(b)* (unless a party files a request pursuant to Rule 73.01(c), a written finding that the PCSA, after consideration of all relevant factors, is unjust or inappropriate is sufficient to rebut presumption that the PCSA is correct). There was testimony at trial regarding both pre- and post-secondary educational expenses, and the court did not specify which ones were factors in its decision. The factors that caused the rebuttal and the deviation from the PCSA must be apparent from the record. *Ponce v. Ponce,* 102 S.W.3d 56, 60 (Mo.App. W.D.2003). If the court included college expenses other than room and board or transportation (which were ordered to be paid by Wife) in

Parenting Plan portion of the judgment. Using these figures, we calculate the PCSA to be $1,478 using the 66% figure, or $1,426 using the 64% figure. This would mean the trial court adjusted the PCSA upward by either $22 per month or $74 per month, respectively. Husband does not question the trial court's assignment of percentages or failure to state the PCSA it adopted on the record, so we need not review those issues.

**6.** Wife testified as to both past expenses and future expenses, requesting reimbursement for past expenses. Wife sought reimbursement for approximately $14,422 in expenses for Kate's college tuition, books, and housing since August 2004; an unspecified amount for

Deirdre's numerous high school dual credit classes (giving credit for college courses while in high school), extracurricular activities, and graduation expenses since September 2004; and approximately $800 for Emily's high school dual credit classes and extracurricular activities. The court awarded Wife $5,807 for "past college expenses," which it arrived at by "dividing equally the costs paid by the mother for Deidre (sic) and Kate and applying a credit of $4,000 from the IRS refund held by the Petitioner for the benefit of the Respondent." The court does not appear to have addressed the extracurricular expenses. Husband does not question this award.

the $1,500 per month child support award, then the entry of an additional separate order to cover these expenses is redundant and, therefore, an abuse of discretion. *See Renaut*, 152 S.W.3d at 436. However, if the court was referring only to non-college educational expenses, room and board, or transportation, then it would not be redundant.

Viewing the evidence in the light most favorable to the judgment, it is reasonable to infer that the trial court included only the amounts for non-college expenses in its upward deviation from the PCSA. As noted *supra*, under any scenario, the maximum deviation from the PCSA that was made by the court was $74 per month. At the time of the judgment, two out of the three children were in college, so only the expenses of the youngest child, Emily, would logically be considered non-college educational expenses. Wife testified that Emily's expenses for dual credit classes and extracurricular expenses over the past year were approximately $800 [7] (or $66 per month over 12 months). She expected Emily to take several more dual credit classes, depending on how many were available, which would mean an increase in her overall educational expenses. The court adjusted the PCSA by either $22 per month or $74 per month, depending on which calculation it used. An adjustment within that range is certainly consistent with the evidence regarding Emily's expenses and is not unreasonable in these circumstances.

Thus, it is clear there is no redundancy in or between the trial court's upward adjustment from the PCSA and its separate order relating to post-secondary expenses. We find no abuse of discretion in the trial court's orders. Point III is denied.

■ For his fourth point on appeal, Appellant alleges that the trial court abused its discretion in awarding Wife attorney fees in the amount of $5,000 because it (a) failed to consider Wife's financial resources, and (b) failed to consider Wife's conduct during the pendency of the action. Section 452.355.1 vests a trial court with discretion to award attorney's fees in a dissolution proceeding after considering all relevant factors, "including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." *Greiner v. Greiner*, 146 S.W.3d 442, 452 (Mo.App. W.D.2004) (internal quotation omitted). The trial court is considered an expert on the issue of attorney fees, and its decision on attorney fees will not be reversed on appeal unless there was an abuse of discretion. *Sullivan v. Sullivan*, 159 S.W.3d 529, 542 (Mo.App. W.D.2005). Even if the trial court does not expressly indicate that it considered all of the factors under § 452.355, we presume that it did consider all the factors, and "the complaining party bears the burden of overcoming that presumption." *Id.* To show abuse of discretion, the complaining party "must show that the attorney's fee award was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Greiner*, 146 S.W.3d at 452.

■ Husband first argues that the trial court failed to consider Wife's financial resources. Wife testified that she had incurred approximately $6,000 attorney fees since January 2005, in addition to $1,500 that she had already paid. She

---

7. The bulk of this amount appears to be for dual credit classes. Wife testified to cross-country track fees of $80.00 and a parking fee of $40.00, but she does not specify the other amounts.

further testified that she is unable to pay all of her attorney fees. Husband's income is almost twice that of Wife's (approximately $4,000 more per month). There is no requirement that a spouse be unable to pay attorney fees; "one spouse's greater ability to pay is sufficient to support an award of attorney fees." *Morse v. Morse,* 80 S.W.3d 898, 907 (Mo.App. W.D. 2002). The trial court may grant a partial award of attorney fees, even if the parties' financial condition does not otherwise necessitate an award of fees, where misconduct has taken place. *Engeman v. Engeman,* 123 S.W.3d 227, 240 (Mo.App. W.D. 2003) (citing *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 655 (Mo. banc 1989)). As is discussed *supra,* there was sufficient evidence to support a finding of misconduct on the part of Husband. Although Husband also contends that Wife failed to submit discovery in a timely manner, thereby leading to Husband's motion to compel discovery and increasing her own attorney fees, there is nothing in the record to show that the trial court agreed with this contention. The trial court did not abuse its discretion in awarding Wife a partial award of $5,000 of attorney fees, considering Husband's greater ability to pay and his misconduct during the marriage. Point denied.

All concur.