

# In the
# Missouri Court of Appeals
# Western District

FLOYD R. FINCH,

        **Appellant,**

v.

JOANN K. FINCH,

        **Respondent.**

**WD76698**

**OPINION FILED:**

**SEPTEMBER 16, 2014**

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable James F. Kanatzar, Judge

**Before Division Two: Victor C. Howard P.J., James E. Welsh, Anthony Rex Gabbert JJ.**

Floyd R. Finch ("Husband") appeals the circuit court's judgment dissolving Husband's marriage to Joann K. Finch ("Wife"). Husband raises eight points on appeal. Husband argues that the court abused its discretion in (1) awarding Wife 54% of the net marital assets, (2) awarding Wife $4,050 in monthly maintenance, (3) finding that Husband was under-employed and in attributing monthly income of $26,935 to him, (4) finding that Husband had failed to account for $100,000 in loan proceeds, (5) failing to credit Husband for the amount of health insurance premiums he was ordered to pay for his minor children in the court's Form 14, (6) requiring Husband to pay retroactive child support, (7) failing to address Husband's post-trial petition and motion, and (8) precluding Husband from cross-examining Wife with leading

questions as an adverse witness and preventing him from offering his own testimony on Wife's failures as a homemaker. We affirm.

**Factual Background**

The parties were married on August 17, 1974. Shortly after they were married, Husband and Wife moved to Boston so that Husband could attend Harvard Law School. Wife worked to provide for them while Husband was in school. Husband worked during the summer to help with the finances.

Upon graduation from law school, Husband accepted a federal clerkship where he clerked for two years. After his clerkship was finished, Husband worked for a large law firm in Kansas City. Husband worked at this large law firm for 29 years, working his way up to a senior partner. In 2009, Husband and another former law partner left the law firm and started their own law partnership called Finch & Campbell. In 2012, four months before the marriage dissolution trial began, Husband left the partnership. Instead of looking for employment elsewhere, Husband decided to work for himself as a solo practitioner.

Husband and Wife had four children. Two of their four children are now emancipated. Shortly after Husband graduated law school, Wife became pregnant with their first child. Husband and Wife decided it would be best if Wife stayed home with the child.

Wife's highest level of education was completion of some hours as a junior in college. Wife held some part-time employment during the marriage, including work as a teacher's aide and part-time library clerk, which helped offset their children's private school fees. Her last employment was in 2005.

2

Throughout the marriage, Wife suffered significant health problems. In the year and a half before the trial, Wife had been hospitalized on four separate occasions. Wife suffered a heart attack and stroke in 2005. Wife has also suffered from periods of severe depression.

Over the course of their marriage, Husband and Wife accumulated quite a large marital estate, including a 7,000 square foot marital residence, four other properties, and generous retirement accounts.

On February 13, 2011, Husband told Wife that he had found someone he thought loved him more than anyone and he asked for a divorce. Husband met his paramour online and testified that she was the only person outside their marriage that he had sexual relations with during their marriage. Shortly before trial, in the summer of 2012, Husband traveled with his paramour for fifteen days to California and Oregon. Husband was living with his paramour at the time of trial.

The trial began on December 3, 2012 and extended over three days. Husband called Wife as his first witness and his direct examination of her lasted a day and a half. Husband's evidence was predominately devoted to his complaints regarding Wife's housekeeping. Husband requested a disproportionate division of the marital property in his favor due to his complaints of Wife's lack of housekeeping.

The trial court entered a Judgment Decree of Dissolution of Marriage on February 25, 2013. On March 14, 2013, Wife filed her Motion to Reconsider and for Amended Decree of Dissolution of Marriage. On June 7, 2013, the court entered its Amended Judgment of Decree of Dissolution of Marriage. The Amended Judgment found that Husband had the ability to earn approximately $26,935 per month, based upon his earnings history from 2007 to 2011. The judgment also ordered Husband to pay Wife child support of $2,409 per month commencing on

3

January 1, 2013. Husband was additionally ordered to pay Wife as periodic maintenance the sum of $4,050 per month commencing March 1, 2013. The trial court's division of martial property and debt resulted in Husband receiving a net award of 46% of the marital estate and Wife receiving a net award of 54%. Husband appeals.

**Standard of Review**

"This Court reviews a judgment in a dissolution proceeding under the same standard applicable to any other court-tried case." *Hart v. Hart*, 210 S.W.3d 480, 484 (Mo. App. 2007). "The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Foraker v. Foraker*, 133 S.W.3d 84, 92 (Mo. App. 2004) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "In making these determinations, this Court views the evidence and all reasonable inferences drawn in the light most favorable to the judgment and disregards all other evidence and contrary inferences." *Hart*, 210 S.W.3d at 484.

**Wife's Motion to Strike**

Before addressing Husband's eight points on appeal, we first address Wife's motion to strike that was taken with this case because it directly affects several of Husband's points. In Wife's motion, she argues that a significant portion of Husband's appendix to his brief and legal files were filed or created by Husband after the trial adjourned and should therefore be stricken from Husband's appeal.

"Rule 78.05 authorizes affidavits, depositions, and oral testimony in connection with after trial motions." *Powell v. State Farm Mut. Auto. Ins. Co.*, 173 S.W.3d 685, 689 (Mo. App. 2005). "Where the issue raised in the after trial motion requires resolution of factual matters not based on facts appearing in the record, the rule authorizes proof by any of the listed methods." *Id.*

4

Here, none of Husband's claims for a new trial require the resolution of factual matters not based on facts appearing in the record such that additional evidence is needed. Instead, Husband wants the trial court, and now this Court, to consider evidence that he failed to present at trial. However, "[e]xhibits attached to motions filed with the trial court are not evidence and are not self-proving." *Id. See also Dawson v. Dawson*, 366 S.W.3d 107, 115 n.11 (Mo. App. 2012) (finding "Mother's Exhibit A to her post-trial motion was not admitted into evidence, and could not have been considered by the trial court."); *In re Marriage of Thomas*, 21 S.W.3d 168, 178 n.11 (Mo. App. 2000) (finding that for the appellate court to treat Exhibit A to Husband's post trial motion "as evidence on appeal without having offered it would deprive Wife of her opportunity to present objections to the exhibit and challenge its admission into evidence."). Therefore, Wife's motion to strike portions of Husband's legal file and appendix referencing the exhibits attached to Husband's post trial motion is granted. Any reference to these stricken exhibits in Husband's points will not be considered in deciding those points. However, we do not strike points II, III, and V of Husband's brief as Wife's motion to strike seeks.

**Division of Marital Property**

In Husband's first point on appeal, he argues that the trial court abused its discretion in awarding Wife 54% of the net marital assets in its Amended Judgment because (1) Wife's interrogatory answers waived any claim for marital misconduct, (2) Wife requested an equal division of marital assets at trial, and (3) Wife's post-trial claim for marital misconduct justifying an unequal division of marital assets did not meet the standard imposed by Missouri law in that there was no evidence that Husband engaged in marital misconduct that imposed a greater burden on Wife under Missouri case law. Husband contends that the property division was not

5

supported by substantial evidence, is against the weight of the evidence, and it erroneously applies the law and standards of § 452.330, RSMo 2000.[1] We find no abuse of discretion.

A trial court has broad discretion in dividing marital property, and "this Court will reverse only if the division is so unduly weighted in favor of one party that it constitutes an abuse of discretion." *Hart*, 210 S.W.3d at 484. A trial court abuses its discretion only where the division of property is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Lagermann v. Lagermann*, 144 S.W.3d 888, 890 (Mo. App. 2004) (internal quotations omitted).

Section 452.330.1 provides that when dividing marital property a trial court should consider all relevant factors, including: (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (3) The value of the non-marital property set apart to each spouse; (4) The conduct of the parties during the marriage; and (5) Custodial arrangements for minor children.

"The five statutory factors of § 452.330.1 are not exclusive, and there is no formula determining the weight to be given to the factors in dividing the marital property." *Hart*, 210 S.W.3d at 485. "The division of property does not necessarily need to be equal, but it must be fair and equitable under the circumstances of the case." *Id.* "The division of property is

---

[1] All statutory references are to the Missouri Revised Statutes 2000 updated through the 2013 cumulative supplement unless otherwise noted.

6

presumed to be correct, and the party challenging the division has the burden of overcoming the presumption." *McNair v. McNair*, 987 S.W.2d 4, 6 (Mo. App. 1998).

Husband first argues that Wife never claimed marital misconduct until her post-trial motion and thereby waived the claim. This argument, however, disregards § 452.330.1 wherein it states that when dividing marital property a trial court should consider all relevant factors, including "[t]he conduct of the parties during the marriage." Nowhere in the statute does it require a spouse to claim misconduct or such claim is waived. Instead, the statute states that the trial court should consider, among other factors, marital misconduct.

Husband next argues that his extra-marital affair only started one month before separation and that sexual misconduct alone is not sufficient to distribute marital assets disproportionately. Husband further argues that Wife failed to prove how his sexual misconduct placed an extra burden on her. The court found, however, not only sexual misconduct by Husband but also "financial misconduct in cohabitating with his paramour and financially supporting the paramour; financial misconduct in controlling the finances of the parties before the separation," as well as controlling finances post-separation, and hiding and secreting marital assets. Furthermore, there is substantial evidence on the record to support the court's finding of sexual and financial misconduct. First, Husband testified that he had sexual relations with his paramour and that he was currently living with her. Second, Husband also testified that he went on a fifteen day trip to California and Oregon with his paramour. Third, Wife testified that Husband was financially controlling. Wife rarely wore makeup or got a hair cut because Husband liked her the way she was and did not see the expense for such things as necessary. After all, Husband cut his own hair for roughly forty years. Additionally, Husband was in sole possession of two lines of credit secured by two properties. Finally, when Wife opened a bank account in her name

7

and deposited $400 given to her by her mother, Husband demanded to be joint owner of the account and know the source of the funds. [2]

Moreover, the court found that the extra-marital affair precipitated the downfall of the marital relationship. Combining all of these findings, it supports a disproportionate distribution of marital property, as they amounted to additional burdens on Wife.

Despite Husband's sexual and financial misconduct, Husband argues that Wife's lack of housekeeping effort throughout the marriage should be marital misconduct on Wife's part and justifies a disproportionate property division in his favor. According to Husband, Wife's lack of housekeeping effort worsened after she suffered from a heart attack and stroke. It should come as no surprise that Husband cites no case law to support this appalling argument. Nevertheless, the record reflects that other factors besides Wife's alleged lack of housekeeping effort played a role in the marital residence's clutter and messiness. Possibly foremost of the factors was Husband's recycling effort. Husband stored recycling materials in the home, on the porch, in the garage, and in the two sheds located on the property. Additional contributing factors include the size of the residence (7,000 square feet), Wife's elderly parents and ill brother living with them for some time, raising four children, having five pets, and Wife's continual decline of health. Furthermore, the record reflects that when Wife asked Husband for help in cleaning the inside of the residence the Husband replied that the inside of the house was not his responsibility.

Therefore, in considering Husband's sexual and financial misconduct during the marriage and the other factors in § 452.330.1, the court did not abuse its discretion in awarding 54% of the martial property to Wife. Point one is denied.

---

[2] To further illustrate Husband's financial control, at one point at trial, Husband suggested that he be awarded all of the assets and he would see to it that Wife would be taken care of after the divorce.

8

**Spousal Maintenance**

In Husband's second point on appeal, he argues that the trial court abused its discretion and misapplied the law in awarding Wife $4,050 in monthly maintenance in its Amended Judgment because (1) Wife failed to establish the amount of income she can earn on the $1,602,005 awarded to her in liquid individual retirement accounts in addition to other income-producing assets, (2) Wife failed to establish the amount of investment income she could reasonably anticipate on a smaller award of marital property that could also meet her reasonable needs, and (3) there are no extraordinary circumstances in this case that should require Husband to deplete martial assets awarded to him in order to pay maintenance. Husband contends that the maintenance award is not supported by substantial evidence, is against the weight of the evidence, and it erroneously applies the law and standards of § 452.335. We find no abuse of discretion.

We review the trial court's decision on maintenance for an abuse of discretion. *Schuh v. Schuh*, 271 S.W.3d 35, 37 (Mo. App. 2008). "An abuse of discretion will be found only where the award is 'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]'" *Sweet v. Sweet*, 154 S.W.3d 499, 504 (Mo. App. 2005) (quoting *Goodin v. Goodin*, 5 S.W.3d 213, 216 (Mo. App. 1999)).

The trial court applies the factors enumerated in Section 452.335.2, RSMo 2000 to determine the amount of maintenance, if any. *Hammer v. Hammer*, 139 S.W.3d 239, 241 (Mo. App. 2004). In applying these factors, the trial court is given broad discretion and must balance the reasonable needs of the spouse seeking maintenance against the ability of the other spouse to pay. *Id*. Further, "the court is not required [in the absence of a request for specific findings] to

9

announce for the record the significance of and the weight that it gave to each factor in determining its award of maintenance." *Id.* (citations omitted).

Husband argues that the court should have imputed income from Wife's IRA and retirement accounts, which were awarded to her in the division of marital property, in calculating maintenance. In support of his argument, Husband relies on *Hill v. Hill*, 53 S.W.3d 114 (Mo. banc 2001) and § 452.335. We disagree.

Neither *Hill* nor § 452.335 mandates that trial court's must impute income from IRA and retirement accounts in calculating maintenance. Instead, *Hill* found quite the opposite. In *Hill*, the court stated that any cases that require, in every case, imputing income from IRA and retirement accounts should not be followed. *Hill*, 53 S.W.3d at 116. The court further held that a trial court may impute income from IRA and retirement accounts after considering such factors as: "the cost to convert the account into cash, the age of the parties, their intent as to investment/consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties." *Id*. In deciding whether to impute income from these accounts, trial courts are given broad discretion and "appellate courts do not interfere, absent abuse of discretion." *Id*.[3]

Furthermore, § 452.335.1 requires that the court consider whether the spouse seeking maintenance "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs…and is unable to support himself through appropriate employment[.]" Nowhere in the statute does it state, nor does the *Hill* case interpret the statute

---

[3]*Hill* found that the trial court abused its discretion not because it failed to impute income from the IRA and retirement accounts. Instead, the Missouri Supreme Court found that the trial court abused its discretion because it "valued the retirement assets—for purposes of division of marital property—at their 'cash' after tax, after penalty value, which was 45% of their true value at the date of dissolution. The judgment cannot be sustained because it values the retirement assets as cash, yet refuses to impute any significant income from them." *Id.* at 116-17.

10

to mean, that the trial court must impute income from IRA and retirement accounts in calculating the need and amount of maintenance as Husband argues.

Additionally, the record reflects that the court considered the factors enumerated in *Hill* and found that Wife's IRA accounts are not readily available to her because she is not yet fifty-nine and a half years old. As a result, the court found that Wife would be subject to various penalties and taxes if withdrawals were made from those accounts. Therefore, the court did not impute any income to Wife from her IRA accounts.

The record further reflects Wife's need of maintenance under § 452.335.1. First, Wife was not employed outside the home for a majority of their thirty-eight year marriage. Second, even though Wife has completed some college courses, Wife lacks education and training which affect her ability to be employed. Finally, and most notably, Wife suffers from numerous physical ailments and memory difficulty which would prohibit her ability to be employed on either a part-time or full-time basis.

Therefore, the trial court did not abuse its discretion by not imputing income from Wife's IRA accounts as these accounts were not readily available to her, and neither the *Hill* case nor § 452.335 require the court to impute such income. Furthermore, as the record reflects Wife's need of maintenance because of her lack of work experience, training, and education, in addition to her poor physical and mental health, the trial court did not abuse its discretion in awarding Wife maintenance. Point two is denied.

**Husband's Monthly Gross Income**

In Husband's third point on appeal, he argues that the trial court abused its discretion and misapplied the law in finding that he was "under-employed and has positioned himself as such" and in attributing monthly income of $26,935 to him in its Amended Judgment based on his

11

gross income from 2007 to 2011 because there was no evidence that Husband was trying to evade his responsibility to support his family. Husband contends that the evidence established that his law partnership had dissolved involuntarily in August 2012, his 2012 income was substantially reduced due to an involuntary reduction in his legal business, and his just-opened solo law practice was unprofitable. We find no abuse of discretion.

We first note that Husband intentionally omitted from the transcript the trial testimony of one of his former employees at the now dissolved law firm of Finch & Campbell. Where employee's testimony should appear, the transcript states in bold lettering: "The direct examination of [employee] by Mr. Finch and the cross-examination by [Wife's counsel] occurring from 3:13 pm to 3:42 pm are omitted from this appeal transcript at the instruction of [Husband]." "It is the appellant's burden to supply the record necessary for our review." *Wagner v. Bondex Intern., Inc.*, 368 S.W.3d 340, 357 (Mo. App. 2012). Where all or part of the transcript is missing from the record on appeal, such evidentiary omission will be taken as favorable to the trial court's ruling and unfavorable to the appeal. *Saturn of Tiffany Springs v. McDaris*, 331 S.W.3d 704, 712 (Mo. App. 2011).

Despite Husband's intentional omission of a part of the trial transcript, the record is still replete with evidence to support the court's determination to impute income of $26,935 per month to Husband in calculating the amount of child support. "The theory behind imputing income to a spouse/parent is directed towards preventing a spouse from escaping responsibilities to the family by deliberately or voluntarily reducing his or her income." *Heck v. Heck*, 318 S.W.3d 760, 764 (Mo. App. 2010) (quoting *Cross v. Cross*, 318 S.W.3d 187, 192 (Mo. App. 2010)) . Thus, in appropriate circumstances, a trial court may impute income to a party according to what that party could earn by using his best efforts to gain employment suitable to

12

his capabilities. *See Butler v. Butler*, 562 S.W.2d 685, 687 (Mo. App. 1977); Form 14, Line 1, Comment H. Appropriate circumstances to impute income to a spouse include situations where the party voluntarily reduced his income without justification or lost his job involuntarily but "has failed to use his or her best efforts to secure new employment, refused offers of employment, or failed to make a showing that the unemployment was something other than temporary." *Hern v. Hern*, 173 S.W.3d 653, 655 (Mo. App. 2005).

Here, the record reflects that Husband is a graduate of Harvard Law School. He was hired by a large Kansas City law firm where he worked for twenty-nine years before quitting. After quitting, he and another law partner established a law partnership called Finch & Campbell. This partnership dissolved roughly four months before trial. Currently, Husband is a solo practitioner and a member of the Missouri Bar Association in good standing. At the time of trial, Husband was listed in Best Lawyers of America in anti-trust, commercial litigation, property litigation, and white collar crime. He was also named as one of the Missouri/Kansas Superlawyers.

Notwithstanding Husband's substantial legal experience and various legal accolades, Husband contends that his gross monthly income for purposes of determining child support should be zero because his law practice has yet to make a profit and the Great Recession has prevented him from getting work that would produce such a high monthly income that the court imputed. We disagree.

The record reflects that Husband is not seeking employment at the present time which would allow him to obtain a salary increase because he wishes to be self-employed. Such failure to seek for better employment and his argument that his gross monthly income on his Form 14

13

should be zero provides further evidence that Husband is intentionally under-employed by deliberately and voluntarily reducing his income. *See Heck*, 318 S.W.3d at 764.

While Husband argues that there is a Great Recession, there is nothing in the record that would require the trial court to find that this Great Recession would continue indefinitely into the future. *Goodwin v. Goodwin*, 746 S.W.2d 124, 127 (Mo. App. 1988) (finding that even assuming that 1986 was a bad year for real estate, "nothing in the record would require the court to find that such condition would continue indefinitely into the future."). If there was an economic downturn, Husband's average gross monthly income of $26,935 over the last five years does not reflect such a Great Recession. Furthermore, Husband admitted at trial that during this terrible economic climate in 2011 he earned $409,833.

Therefore, there is substantial evidence on the record that Husband has significant legal experience and education, yet Husband does not seek employment at the present time which would allow him to obtain a salary because he wishes to be self-employed. As such evidence supports the court's finding that Husband is currently under-employed and has positioned himself as such, the court did not abuse its discretion in imputing monthly gross income to Husband of $26,935 for purposes of calculating child support. Point three is denied.

### Loans Proceeds

In Husband's fourth point on appeal, he argues that the trial court abused its discretion and misapplied the law in finding in its Amended Judgment that Husband had failed to account for $100,000 in loan proceeds. Husband contends that Wife waived this claim in her discovery responses, the issue was not raised at trial, but was raised for the first time in Wife's proposed

14

post-trial findings. Finally, Husband argues that the trial court abused its discretion when it refused to supplement the record to consider Husband's post-trial response to this ambush.[4]

"[T]he trial court enjoys broad discretion in making determinations on issues relating to the squandering of assets, because it is in the better position to judge credibility." *Heslop v. Heslop*, 967 S.W.2d 249, 255 (Mo. App. 1998). Nevertheless, "[t]he party alleging that another party squandered property must present evidence of it or no finding of squandering or reimbursement will result." *Lawrence v. Lawrence*, 938 S.W.2d 333, 338 (Mo. App. 1997). As neither party requested findings of facts and conclusions of law on any issues, "the appellate court presumes that the trial court resolved factual issues in accordance with the result reached." Rule 73.01(c); *Henning v. Henning*, 72 S.W.3d 241, 247 (Mo. App. 2002).

Here, Husband testified at trial that he borrowed $275,000 on the home equity line against the marital residence to purchase another residence located on Stone Ridge. The purchase price of that home was $195,000. Husband offered no explanation at trial for use of the additional $80,000. Husband also testified that he borrowed another $80,000 on a home equity line of credit secured by a different residence. Husband testified that he took the $80,000 to reimburse withdrawals from IRA accounts allegedly used to pay household expenses and start his own law practice. Husband learned, however, that he would not be able to put the money back into the IRAs. On the date of trial, only $33,000 remained of the $80,000. The remaining balance was awarded to Husband in the property division. The trial court "may order reimbursement of squandered or secreted marital property or include such assets as part of the

---

[4] As Husband fails to provide any legal support or develop his argument regarding the trial court's refusal to supplement the record after the trial. This portion of his point is deemed abandoned because Husband failed to cite any applicable case law or present any facts received in evidence that would support his claim of error. *In re Marriage of Michael*, 142 S.W.3d 912, 930 (Mo. App. 2004); *In re Marriage of Spears*, 995 S.W.2d 500, 503 (Mo. App. 1999).

15

martial property." *In re Thomas*, 21 S.W.3d at 173. As the record reflects that Husband took out two equity lines of credit, yet could not account for all of the borrowed funds, there is substantial evidence on the record to support the trial court's conclusion that Husband failed to account for $100,000 in loan proceeds. Point four is denied.

## Medical Insurance Premium

In Husband's fifth point on appeal, he argues that trial court erred in failing to credit Husband in its Amended Judgment for the amount of health care insurance premiums Husband was ordered to pay for his then-minor children in the trial court's Form 14 calculation of child support. Husband contends that the health insurance deduction is required in Form 14 and the trial court made no findings that the deduction is unjust or inappropriate. This Court is precluded from addressing this issue as Husband failed to file a Form 14.[5] Failure to file a Form 14 precludes a party from challenging the trial court's calculation of child support. *Basham v. Williams*, 239 S.W.3d 717, 724 (Mo. App. 2007) (holding that "[t]o permit a party who did not file a Form 14 with the trial court to appeal child support decisions is akin to pursuing a different theory of recovery on appeal than was pursued at trial."); *Davies v. Davies*, 887 S.W.2d 800, 805 (Mo. App. 1994). As this Court is precluded from addressing this point and declines to review Husband's point *ex gratia*, point five is denied.

## Retroactive Child Support

In his sixth point on appeal, Husband argues that the trial court abused its discretion and misapplied the law in the Amended Judgment by requiring Husband to pay child support retroactively to January 1, 2013. Husband contends that he had already paid all the minor

_____

[5] Husband filed a Form 14 attached as an exhibit to his post-trial motion. As Husband's exhibit was not admitted into evidence, the trial court could not have considered Husband's Form 14. *See Dawson*, 366 S.W.3d at 115 n.11.

16

children's expenses through February 2013, and Wife waived retroactive child support because she never asked for temporary or retroactive child support. We disagree.

The decision to make an award of child support retroactive is within the sound discretion of the trial court. *Farr v. Cloninger*, 937 S.W.2d 760, 763 (Mo. App. 1997). The trial court's determination of the effective date of child support judgment should not be disturbed absent an abuse of discretion. *Snell v. Snell*, 916 S.W.2d 414, 416 (Mo. App. 1996).

Section 452.340.1 allows a trial court to order that child support be awarded retroactive to the filing date of the petition. Section 452.340.1 reads, in pertinent part, that "the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for the support of the child, *including an award retroactive to the date of filing the petition…*" (emphasis added).

Here, Wife requested an award of child support in her Counter-Petition for Dissolution of Marriage. The trial ended on December 5, 2012 and the original dissolution decree was entered on February 25, 2013. In this decree, it was ordered that Husband pay child support commencing January 1, 2013. As the Husband was ordered to pay child support the first day of the month after trial commenced, the trial court's order was within the statutory guideline that allows child support be awarded retroactive to the date of filing. § 452.340.1.

Despite the trial court's statutory authority to award retroactive child support, Husband cites *C.M.D. v J.R.D.*, 710 S.W.2d 474 (Mo. App. 1986) and facts not on the record to support his stance that the court abused its discretion in awarding him to pay retroactive child support. However, neither establishes that the child support judgment was a misapplication of the law, or is arbitrary and capricious. First, when *C.M.D.* was decided in 1986, a trial court did not have statutory authority to order retroactive child support. Section 452.340 was amended in 1988,

17

giving trial courts statutory authority to award retroactive child support. § 452.340.1, RSMo Cum. Supp. 1988. Second, Husband argues that he paid all of the children's expenses through February 2013. However, Husband cites exhibits in the legal file that were not received in evidence at trial to support this argument. On appeal, we consider only the record made in the trial court. *Sleater v. Sleater*, 42 S.W.3d 821, 822 n.1 (Mo. App. 2001).

As neither Husband's cited case law, nor his reliance on evidence not received at trial, established that the child support judgment was a misapplication of the law, or is arbitrary and capricious, Husband failed to meet his burden. Therefore, the trial court did not abuse its discretion by ordering Husband to pay retroactive child support. Section 452.340.1 provides that a trial court may award child support retroactive to the date of filing the petition. As the trial court's retroactive child support date was within this statutory guideline, Husband's point six is denied.

### Husband's Post-Trial Motions

In Husband's seventh point on appeal, he argues that the trial court abused its discretion and misapplied the law by failing to address (1) the cost of repairs to the marital residence caused by post-separation waste of that marital asset, (2) Husband's petition for damages to the marital residence post-separation for economic misconduct, neglect, waste, and lost value of marital assets, and (3) Husband's alternative motion to set aside the judgment under Missouri Rule 74.06(b)(2). Husband contends that because a marital asset awarded to Husband was damaged post-separation and post-trial due to Wife's neglect of the family pets that it is unfair to place the burden on him to repair the damages that happened when the house was exclusively in Wife's possession as such burden would result in an inequitable division of marital assets in violation of § 452.330. We find no abuse of discretion.

18

While Husband argues in his point relied on that the court failed to address his alternative motion to set aside the judgment under Missouri Rule 74.06(b)(2), Husband fails to even address this motion in his argument section. Errors raised in points relied on not supported by argument are deemed abandoned and present nothing for appellate review. *In re Marriage of Michael*, 142 S.W.3d at 930.

Having abandoned his failure to address argument as it relates to the alternative motion to set aside the judgment, we turn to Husband's other argument. Husband argues that the court failed to address his post-trial petition for damages to the Strode House post-separation. Husband's argument, however, clearly overlooks the record. The Amended Judgment states in pertinent part:

> The court does not find credible that it will cost in excess of $51,000 to restore the [marital residence] home to a marketable condition. If the home needs to be cleaned and maintained, the court finds that this responsibility does not rest solely on the [Wife's] shoulders. Further, even if it will cost some amount of money to clean the home, neither party plans on selling the home.

Here, it is clear from the record that the court did in fact address Husband's petition regarding damages to the marital residence but did not find credible Husband's testimony at trial, or in his petition, regarding the matter. Determinations of credibility are within the trial court's broad discretion and this Court wisely defers to the trial court's discretion on credibility matters. *Maskill v. Cummins*, 397 S.W.3d 27, 34 (Mo. App. 2013).

While Husband may not agree with the court's findings, his only argument here is that the court *failed to address* his petition for damages, as his other point relied on is abandoned. As the record reflects that the court did in fact address Husband's petition for damages, the court did not abuse its discretion and misapply the law. Point seven is denied.

**Wife's Housekeeping Efforts**

19

In Husband's final point on appeal, he argues that the trial court abused its discretion by precluding him from cross-examining Wife with leading questions as an adverse witness. Husband further contends that the court abused its discretion by preventing him to testify about Wife's failures as a homemaker on the grounds that the housekeeping failures did not impair the value of the house because it went towards his argument that Wife's failures put an extra burden on him justifying an unequal division of marital assets. We find no abuse of discretion.

"The trial court is vested with broad discretion regarding rulings on the admission of evidence[.]" *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 819 (Mo. banc 2000). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

It should come as no surprise that Husband's final point on appeal comes full circle back to his first argument and Wife's alleged lack of housekeeping effort. In an attempt to get this Court to buy his argument, Husband claims that he wasn't able to ask Wife leading questions or testify himself to Wife's lack of housekeeping effort. This Court, like the trial court below, is not buying what Husband is trying to sell—an unequal distribution of marital property division in Husband's favor because of Wife's alleged housekeeping failures.

Here, Husband provides legal authority to support his argument and then lists transcripts pages for us to examine on our own. "When a party fails to develop a point relied on in the argument section, it is deemed abandoned." *Lack v. Payne*, 151 S.W.3d 862, 867 (Mo. App. 2004). Husband fails, however, to properly develop his point by explaining how the cited authority and the cited transcripts pages amounts to an abuse of discretion by the trial court. Instead, Husband leaves this Court to provide the explanation part of his analysis, which we

20

cannot do. *Thompson v. Thompson*, 786 S.W.2d 891, 892 (Mo. App. 1990) (stating that "[i]t is not the duty of an appellate court to become an advocate for the appellant[.]"). Therefore, Husband's final point is deemed abandoned and denied.

**Conclusion**

We conclude, therefore, that the circuit court did not abuse its discretion in (1) awarding Wife 54% of the martial property because the court properly considered Husband's sexual and financial misconduct during the marriage, as well as the other factors in § 452.330.1; (2) awarding Wife $4,050 in monthly maintenance because neither the *Hill* case nor § 452.335 require the court to impute income from Wife's IRA and retirement accounts and the facts supported Wife's need for maintenance; (3) finding that Husband was under-employed and in attributing monthly income of $26,935 to him because there is sufficient evidence on the record that Husband has significant legal experience and education to allow him to obtain a salary more closely aligned with his experience and education; (4) finding that Husband had failed to account for $100,00 in loan proceeds because there was sufficient evidence on the record that Husband took out two equity lines of credit but could not account for all of the borrowed funds; (5) failing to credit Husband for the amount of health care insurance premiums Husband was ordered to pay for his then minor children because this Court is precluded from addressing this point as Husband failed to provide the court with a Form 14; (6) requiring Husband to pay child support retroactively because § 452.340.1 provides that a trial court may award child support retroactively to the date of filing the petition and the court's retroactive date was within this guideline; (7) failing to address Husband's petition for damages to the marital residence post-separation and his motion to set aside the judgment because the court did in fact address Husband's petition for damages and Husband abandoned his motion to set aside the judgment

21

point as he failed to support it with argument; and (8) precluding Husband from cross-examining Wife with leading questions and preventing him to testify about Wife's failures as a homemaker because Husband failed to properly develop his point, thereby abandoning the point. We affirm the circuit court's judgment.

/s/
Anthony Rex Gabbert, Judge

All concur.