IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 ALEXANDRA C. PREVOST, )
 )
 Appellant, )
 WD84501
 v. )
 )
 OPINION FILED:
 )
 March 8, 2022
 BRETT M. SILMON, )
 )
 Respondent. )

 Appeal from the Circuit Court of Platte County, Missouri
 The Honorable W. Ann Hansbrough, Judge

 Before Division One: Mark D. Pfeiffer, Presiding Judge, and
 Karen King Mitchell and Gary D. Witt, Judges

 Ms. Alexandra Prevost (“Mother”) appeals from the Judgment of Modification

(“Judgment” or “Modification Judgment”) of the Circuit Court of Platte County, Missouri (“circuit

court”), modifying the previously entered Judgment of Dissolution (“Dissolution Judgment”) and

awarding Mr. Brett Silmon (“Father”) sole legal custody of their minor child (“Child”). We affirm.

 Factual and Procedural Background1

 Mother and Father married November 1, 2013, in Grand Forks, North Dakota, where they

both served in the Air Force. The couple’s child was born December 8, 2014, and, that same day,

 1
 Since Points I and II are the only preserved points on appeal and those points assert against-the-weight-of-
the-evidence challenges, we review the record under that lens of review. In that regard, we note that the evidence
Mother was discharged from the Air Force. Thereafter, the couple moved to the Air Force

Academy in Colorado Springs, Colorado, as Father was still enlisted in the Air Force. The couple

remained together in Colorado until November 2017 when Mother, alone, relocated to Platte

County, Missouri.

 In January 2018, the couple agreed to dissolve the marriage. Mother retrieved Child from

Colorado and returned to Platte County, Missouri. Father was medically discharged from the Air

Force after suffering a traumatic brain injury and moved to Arcadia, Louisiana, temporarily.

Father eventually remarried and resides in El Dorado, Arkansas, and is employed by the United

States Department of Defense. Mother lives with her parents in North Kansas City, Missouri, and

works for FedEx.

 In early 2018, Mother filed an uncontested dissolution of marriage petition with the circuit

court. The circuit court entered its Dissolution Judgment on April 19, 2018. In pertinent part, the

circuit court awarded Mother and Father joint legal and physical custody of Child, ordered that no

child support be paid by either party, and entered a parenting plan that called for the parties to

exchange Child every six weeks until Child entered school or until the parenting plan was

modified.

 Between March 2018 and July 2019, the parenting plan seemingly worked. However,

beginning in July 2019, things deteriorated between Mother and Father. Mother refused to permit

before the circuit court was contested and required credibility determinations by the circuit court. “When reviewing
the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court’s findings of fact
when the factual issues are contested and when the facts as found by the circuit court depend on credibility
determinations.” Ivie v. Smith, 439 S.W.3d 189, 206 (Mo. banc 2014). Mother’s Statement of Facts in her appellate
brief violates this standard of review and the Rule 84.04(c) requirement that the facts be presented in a “fair and
concise statement . . . without argument.” Mother’s Statement of Facts cites to certain evidence as “fact” where the
circuit court expressly found the evidence lacking in credibility; Mother fails to recite the evidence favorable to the
judgment; and, Mother’s recitation of the facts is argumentative. It is with some trepidation that we do not simply
dismiss the appeal, for it suggests that we are tolerant of a disregard for Rule 84.04; we are not. However, because
we are able to discern the relevant facts and arguments, we exercise our discretion to provide the parties a substantive
discussion of the issues in our ruling today.

 2
Child to return to Father after a summer vacation trip with Mother to Branson in 2019. Mother

subsequently limited Father’s parenting time to a couple of days for the remainder of 2019 and

refused to give Child Christmas presents that Father sent to Mother for that purpose.

 Father thereafter filed a motion to modify the Dissolution Judgment seeking to obtain sole

legal and physical custody of Child. L.F. Doc. 2, at 6, ¶ 1. Mother responded with a

counter-motion to modify in which she requested sole legal and joint physical custody, that the

parenting plan be modified, Father reimburse her for child-care expenses, and Father be ordered

to pay child support going forward and retroactive from the date Father filed for modification.

L.F. Doc. 5, at 3. The circuit court appointed a guardian ad litem (“the GAL”) following Mother’s

allegations that Father abused Child by using excessive and unreasonable corporal punishment.

 A trial was held on the motions to modify on November 4 and 9, 2020, wherein Mother

and Father both testified and were each represented by counsel. In addition to Mother’s and

Father’s testimony, the circuit court heard testimony from the GAL, Father’s wife, Father’s

mother, and two of Father’s aunts. On December 22, 2020, the circuit court entered its

Modification Judgment and, in pertinent part, made the following findings pursuant to

section 452.375.2(1)-(8):

 (1) The wishes of the child’s parents as to custody and the proposed parenting plan submitted

by both parties:

 • Father’s parenting plan requests that the parties share joint legal and physical custody,
 but that his address be designated as the child’s address for school and mailing.

 • Mother’s parenting plan requests that she have sole legal custody of the child and that
 the parties share joint physical custody, but that her address be designated as the child’s
 address for school and mailing.

 3
 (2) The needs of the child for a frequent, continuing and meaningful relationship with both

parents and the ability and willingness of parents to actively perform their functions as mother and

father for the needs of the child:

 • When the child was expelled from preschool in December 2018, Mother asked Father
 to “come get him,” although Mother was to exercise holiday parenting time that year.

 • While Child lived with Father between December 2018 and July 2019, Father advised
 Mother of two potential schools that he was investigating for Child to attend. Mother
 responded that either school was fine with her but later rescinded her agreement on the
 topic.

 • Mother recorded Child’s virtual visits with Father despite Child informing Mother that
 he did not like her doing that.

 • Father’s Mother testified that when Father lived with her, Father never asked her to
 babysit Child.

 • Mother works part-time and does not begin her shift until 7:00 p.m. Mother
 nevertheless sends Child to after-school care until 5:15 p.m. Mother’s justification for
 this is that she takes online college courses in the morning all but two days a week
 when the courses end at 2:15 p.m. Mother puts Child to bed at 7:00 p.m.

 • Despite Mother alleging that Father physically abused Child, Mother was comfortable
 with allowing Child to live with Father for several months and encouraged Father to
 book a hotel room in Kansas City to exercise his parenting time.

 • Father admits that he spanked Child with a belt on two occasions. Father’s justification
 for this is that he tried other manners to correct Child’s behavior, and in one particular
 instance involving a pontoon boat, Child was in danger of drowning if his behavior was
 not modified.

 • Mother alleged that Father abused Child in one instance because of a scar on Child’s
 lower back. Father explained that Child fell while playing on a bed and hit his back on
 a curtain hook attached to the wall. This explanation was confirmed by Father’s
 Mother. Father testified that he did not inform Mother of this incident because he
 believed it to be a minor matter. Mother testified that Child informed her that Father
 had “hit him with a slapper.”

 • Mother made another allegation of abuse regarding a mark on Child’s head. Mother
 alleged that Father hit Child with a golf club and witness Stephanie Silmon made the
 same allegation. It was disclosed that Stephanie Silmon stayed with Mother at her
 family home while in Kansas City for the trial. For several reasons, the circuit court
 did not find Stephanie Silmon’s testimony credible.

 4
 • Stephanie Silmon made two other allegations of abuse that caused the trial court to
 question her credibility. In cross-examination, it became obvious that she did not share
 her concerns of abuse with the GAL during a telephone interview. And, during trial
 proceedings, a photograph of Child as an infant was admitted, which showed that the
 mark on his head was a birthmark and not a scar. The GAL made no record of Child
 being hit in the head with a golf club.

 • Mother alleges that Father spanks Child regularly, far exceeding the two occasions
 disclosed by Father. Another of Father’s aunts, Karen Silmon, who is the principal of
 an elementary school and who witnessed the two incidents in which Father spanked
 Child with a belt, testified that those incidents were not abusive and were necessary to
 correct Child’s behavior, as Father had already attempted other methods. Although
 Karen Silmon is a mandated reporter, she did not report either instance as abuse.

 • Both parties agreed to spanking as a form of discipline.

 • All of Mother’s allegations of abuse allegedly occurred before July 2019.

 • Mother admits that she smacks Child in the face to get him to eat.

 • The GAL testified that she did not believe that either parent abused Child.

 (3) The interaction and interrelationship of the child with parents, siblings, and any other

person who may significantly affect the child’s best interests:

 • Child has a good relationship with his stepmother, Father’s wife, Tara. They build forts
 in the living room together and this relationship was confirmed by Father’s mother
 based on her observations of Child and Tara together.

 • Tara testified that Child is very excited for Father to come home. Child says things
 like, “[I] can’t wait for daddy to come home so we can go build something in the shop.”

 • Child has a close relationship with his maternal grandparents whom he calls Mama and
 Papa.

 • Numerous relatives live in close proximity to Father’s home in El Dorado, Arkansas.

 (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact

with the other parent:

 • Mother did not list Father as an emergency contact on Child’s school records.

 • Father did list Mother as an emergency contact on Child’s school records.

 5
 • Mother refused Father parenting time on two occasions, citing “family pictures” as
 justification for refusing parenting time.

 • Mother refused Father parenting time during Christmas 2019. Despite Father not
 seeing Child that Christmas, Father sent gifts. However, Mother refused to give Child
 the gifts.

 • Father alleged that Mother distracts Child during virtual visits. Father testified that on
 one occasion Mother told Child that Father “doesn’t want to see you ride your bike.”

 • During another virtual visit between Father and Child, Mother disturbed the call and
 Child told her, “[N]o, I want to talk to Daddy.”

 • While both parties were in the Kansas City area for trial, Mother refused Father
 parenting time.

 • When Child went to Branson, Missouri, for vacation, Mother refused to allow Child to
 return to Father’s home in Arkansas.

 (5) The child’s adjustment to the child’s home, school, and community:

 • Child displayed numerous behavioral difficulties at school while living with Mother.

 • Child was expelled from preschool while living with Mother.

 • Recently, while living with Mother, Child received out-of-school suspension for
 conduct that resulted in the school being evacuated. Mother did not inform Father of
 this incident until days later.

 • Father testified that Child did not display behavioral problems while living with him.

 • Karen Silmon testified that Child’s behavior is exemplary when he is with Father.

 (6) The mental and physical health of all individuals involved, including any history of abuse

of any individuals involved:

 • Father has post-traumatic stress disorder (“PTSD”) from two brain injuries that he
 sustained in the military. Father has sought and received treatment for his condition,
 and Father testified that his condition does not interfere with his ability to parent Child.
 Tara testified that she has not witnessed Father have explosions of anger or exhibit
 inappropriate behavior as a result of PTSD.

 (7) The intention of either parent to relocate the principal residence of the child:

 6
 • Mother currently lives with her father and stepmother. Mother indicated that she
 planned to move in the future, but would remain in the same school district.

 • Although Father moved three times after his discharge from the military, he and Tara
 purchased a home in June 2019 and do not intend to move.

 (8) The wishes of a child as to the child’s custodian:

 • The GAL testified that the only time she heard Child discuss a parent’s residence, Child
 indicated that he wished to live with Father.

 The circuit court further found that it was in the best interests and welfare of Child to grant

Father sole legal custody and to continue joint physical custody, but with Father’s address

designated as Child’s address for mailing and educational purposes. The circuit court rejected

both Mother’s and Father’s proposed parenting plans and, instead, adopted the parenting plan of

the GAL with modifications to meet the best interests of Child. The circuit court denied Mother’s

requests for child support, retroactive and prospective, rejecting all three of Mother’s Form 14s as

unjust and inappropriate. Instead, the circuit court adopted Father’s Form 14 and ordered Mother

to pay prospective child support to Father in the amount of $221 per month. The circuit court

denied Mother’s motion to reapportion the GAL’s fees according to the party’s respective incomes.

The circuit court also denied each of the party’s motions for attorney’s fees.

 Mother now appeals. Additional facts necessary to the resolution of the issues on appeal

will be discussed below.

 Standard of Review

 We review a bench-tried case under the standard outlined in Murphy v. Carron, 536 S.W.2d

30, 32 (Mo. banc 1976). We will affirm the judgment unless there is no substantial evidence to

support it, it is against the weight of evidence, or the court erroneously declared or applied the law.

Id. “We will not disturb the trial court’s determination of custody issues unless we are firmly

 7
convinced of its error and that the award is against the best interests of the children.” Prach v.

Westberg, 455 S.W.3d 513, 516 (Mo. App. W.D. 2015).

 In reviewing the record in an against-the-weight-of-the-evidence challenge, we
 defer to the [circuit] court’s factual findings when the factual issues are contested
 and when the facts as found by the [circuit] court depend on credibility
 determinations. We defer to the [circuit] court’s credibility determinations because
 the [circuit] court is in a better position to weigh the contested and conflicting
 evidence in the context of the whole case, including weighing the demeanor,
 sincerity, and character of witnesses.

C.D.R. v. Wideman, 520 S.W.3d 839, 843 (Mo. App. W.D. 2017) (internal quotation marks and

citations omitted).

 Point I

 In Mother’s first point on appeal, she impermissibly raises two separate against-the-weight-

of-the-evidence claims in one point relied on: (1) that the circuit court erred in awarding Father

sole legal custody of Child; and (2) that the circuit court erred in adopting the GAL’s parenting

plan.2

 Analysis

 “‘[A] claim that the judgment is against the weight of the evidence presupposes that there

is sufficient evidence to support the judgment.’” Ivie v. Smith, 439 S.W.3d 189, 205 (Mo. banc

2014) (quoting J.A.R. v. D.G.R., 426 S.W.3d 624, 630 (Mo. banc 2014)). “In other words, ‘weight

of the evidence’ denotes an appellate test of how much persuasive value evidence has, not just

whether sufficient evidence exists that tends to prove a necessary fact.” Id. at 206. “The

 2
 “A point relied on is multifarious if ‘it groups together multiple, independent claims rather than a single
claim of error.’” Cityview Real Est. Servs., LLC v. K.C. Auto Panel, Inc., 576 S.W.3d 187, 191 (Mo. App. W.D. 2019)
(quoting Kirk v. State, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017)). “‘Multifarious points relied on are noncompliant
with Rule 84.04(d) and preserve nothing for review.’” Griffitts v. Old Republic Ins. Co., 550 S.W.3d 474, 478 n.6
(Mo. banc 2018) (quoting Kirk, 520 S.W.3d at 450 n.3). We are nevertheless able to discern Mother’s arguments in
point one, and the defective nature of this point relied on does not impede our disposition of the claim on the merits.
Wennihan v. Wennihan, 452 S.W.3d 723, 728 (Mo. App. W.D. 2015). Hence, ex gratia, we analyze the substantive
arguments raised in this point, though the parenting plan analysis is discussed in our analysis of Point II.

 8
against-the-weight-of-the-evidence standard serves only as a check on a circuit court’s potential

abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases,

when it has a firm belief that the decree or judgment is wrong.” Id.

 A party raising an against-the-weight-of-the-evidence challenge must follow the four-step

analytical sequence set forth in Houston v. Crider, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010):

 (1) identify a challenged factual proposition, the existence of which is necessary to
 sustain the judgment;

 (2) identify all the favorable evidence in the record supporting the existence of that
 proposition;

 (3) identify the evidence in the record contrary to the belief of that proposition,
 resolving all conflicts in testimony in accordance with the trial court’s credibility
 determinations, whether explicit or implicit; and,

 (4) demonstrate why the favorable evidence, along with the reasonable inferences
 drawn from that evidence, is so lacking in probative value, when considered in the
 context of the totality of the evidence, that it fails to induce belief in that
 proposition.

Int. of B.K.F., 623 S.W.3d 792, 797 (Mo. App. W.D. 2021).

 The fatal flaw in Mother’s argument lies in the fact that she fails to engage in the four-step

analysis identified above. For example, Mother identifies a challenged factual proposition: that a

change has occurred in the circumstances of Child or Child’s parents and that modification is

necessary to serve the best interests of the child. But, that is the extent of Mother’s adherence to

the four-step analysis in Houston. Instead of identifying favorable evidence in the record

supporting that proposition or identifying evidence contrary to that proposition in accordance with

the circuit court’s credibility determinations, Mother merely posits bare assertions that the circuit

court failed to make any findings supporting a change in circumstances and the necessity of

modification. (Appellant’s Br. 46). Mother’s argument, thus, “‘lacks any analytical or persuasive

value.’” Int. of B.K.F., 623 S.W.3d at 797 (quoting J.A.R., 426 S.W.3d at 631 n.12).

 9
 A court shall not modify a prior custody decree unless it finds, upon facts that have arisen

since the prior decree or that were unknown at the time of the prior decree, that a change has

occurred in the circumstances of the child or his custodian and that the modification is necessary

to serve the best interests of the child. See § 452.410.1.3 A judgment granting sole legal custody

must be based on a finding that the parties lack a commonality of beliefs concerning parental

decisions, and lack the willingness and ability to function as a unit in making those decisions.

Reno v. Gonzales, 489 S.W.3d 900, 905 (Mo. App. W.D. 2016).

 Here, we first note that Mother herself asserted a competing motion for sole legal custody

below in which Mother argued that circumstances had so changed that modification of the circuit

court’s original custodial decree required modification. And, in Mother’s appellate briefing to this

Court in Point II, Mother asserts that “the parties were unable to function as a unit.” (Appellant’s

Br. 49). Accordingly, both at the circuit court and appellate court levels, Mother’s assertions are

legally inconsistent; one cannot argue that such a significant change in circumstances has occurred

necessitating a claim for sole legal custody on the one hand, but then accuse the circuit court of

error for agreeing that the parties are no longer able to function as a joint legal custody unit and a

custodial change is necessary on the other hand. See Stephen W. Holaday, P.C. v. Tieman, Spencer

& Hicks, L.L.C., 609 S.W.3d 771, 780-81 (Mo. App. W.D. 2020) (concluding that where a party

has taken legally inconsistent positions, the doctrine of estoppel applies to prevent such legally

inconsistent positions). Irrespective of Mother’s logically and legally inconsistent arguments, the

circuit court’s detailed judgment made the requisite findings to support its conclusions awarding

sole legal custody to Father in the Modification Judgment, to-wit:

 • After Child was expelled from preschool in Missouri while living with Mother,
 Mother sent Child to live with Father. Father identified and informed Mother
 of two different preschools that Child could attend in Arkansas. Although
 3
 All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

 10
 Mother initially agreed that both schools were fine with her, she later refused
 to allow Child to attend either school.

 • Despite both parents agreeing to corporal punishment as a method of
 disciplining Child, Mother later alleged that Father’s corporal punishment was
 abusive, an allegation that neither the GAL nor the circuit court found credible.
 And, Mother’s definition of corporal punishment included slapping the child in
 the face to get Child to eat, a version of punishment that led Father and Mother
 into strong disagreement with each other.

 • Mother refused to list Father as an emergency contact on Child’s school records,
 though Father did list Mother as an emergency contact on similar records.

 • Mother refused Father parenting time on multiple occasions including
 Christmas 2019. Nevertheless, Father sent Christmas gifts to Child at Mother’s
 home—gifts that Mother refused to give to Child. [Tr. 61-62, 376-78]. While
 both parties were in Kansas City for trial, Mother refused Father any parenting
 time with Child. Finally, the incident precipitating the instant litigation arose
 from a disagreement between the parties regarding whether the child would
 return to live with Father or Mother after the Child’s summer vacation to
 Branson.

 • Mother testified that prior to trial she sought to have Child screened for autism,
 but Father testified that Mother did not inform him of her intentions nor did she
 share the necessary paperwork with him until she had already submitted that
 paperwork to Children’s Mercy Hospital. [Tr. 72-73, 185-86, 201-02, 356-57].
 Mother also testified that she and Father had disagreements about Child
 participating in counseling and what provider would counsel Child.
 [Tr. 297-301].

 Based upon this evidence, it is clear that Mother and Father lack a commonality of beliefs

concerning parental decisions, as well as a willingness and ability to function as a unit in making

those decisions. Thus, unlike the circumstances that existed as of the Dissolution Judgment, the

parties were no longer able to jointly share legal custody of Child, and the circuit court’s ruling to

that effect is supported by competent and substantial evidence.

 Insofar as Mother asserts that granting Father sole legal custody was not in the best interests

of Child, the circuit court’s judgment addresses this topic by way of numerous conclusions from

substantial and competent evidence before the circuit court.

 11
 The circuit court concluded that Child exhibited severe behavioral problems at school

while living with Mother, but did not exhibit the same problems while living with Father. The

circuit court concluded that Mother disrupted virtual visits between Child and Father, while Father

did not reciprocate Mother’s behavior during virtual visits between Child and Mother. The circuit

court found that Mother refused Father parenting time on numerous occasions, though Father never

refused parenting time to Mother. And, the circuit court (along with the GAL) concluded that

Mother made non-credible allegations of abuse against Father, while Father did not engage in such

petty conduct towards Mother. And, ultimately, the circuit court noted that the GAL believed

Child’s desire was to live primarily with Father.

 Considering the detailed findings articulated in the circuit court’s judgment, Mother’s

suggestion that the award of sole custody to Father was against the weight of the evidence is an

argument not supported by the record and must, accordingly, fail.

 Point I is denied.

 Point II

 In Mother’s second point on appeal, she contends that the circuit court misapplied

section 452.375.64 and failed to make findings permitting the circuit court to reject the respective

parenting plans submitted by Mother and Father and, instead, adopt the parenting plan proposed

by the GAL. We disagree with Mother’s characterization of the evidentiary record and the circuit

court’s findings supporting its adoption of the parenting plan proposed by the GAL.

 4
 Section 452.375.6 provides:

 If the parties have not agreed to a custodial arrangement, or the court determines such arrangement
 is not in the best interest of the child, the court shall include a written finding in the judgment or
 order based on the public policy in [section 452.375.4] and each of the factors listed in subdivisions
 (1) to (8) of [section 452.375.2] detailing the specific relevant factors that made a particular
 arrangement in the best interest of the child. If a proposed custodial arrangement is rejected by the
 court, the court shall include a written finding in the judgment or order detailing the specific relevant
 factors resulting in the rejection of such arrangement.

 12
 Analysis

 There is no prescribed format or magic formulation that the circuit court must include in

its judgment in order to comply with the statutory requirements found in section 452.375.6;

instead, it is only necessary that the circuit court’s judgment “allow for meaningful appellate

review.” T.J.E. v. M.R.M., 592 S.W.3d 399, 403 (Mo. App. E.D. 2020); see also Erickson v.

Blackburn, 169 S.W.3d 69, 75 (Mo. App. S.D. 2005) (“While they do not track the order or

verbiage of the factors listed in [section 452.375.6], the court’s findings of fact clearly show that

the judge made written findings on, at a minimum, five of the eight statutory factors.”). To permit

meaningful review, the circuit court’s judgment should include discussion of the relevant

best-interest-of-the-child factors listed in section 452.375.2(1)-(8); the public policy of frequent,

continuing, and meaningful contact of the parents found in section 452.375.4; and a specific

written parenting plan under section 452.375.9. Abernathy v. Collins, 524 S.W.3d 173, 180-81

(Mo. App. W.D. 2017). We believe the circuit court’s judgment does allow for meaningful

appellate review in this context, contrary to Mother’s assertions, by providing, in great detail, these

statutorily required findings.

 The circuit court’s findings regarding section 452.375.2(1)-(8) have been recounted above

and will not be repeated here. It is clear to this Court that the circuit court’s judgment concluded

that sole legal custody in favor of Father was necessary in that Mother and Father could no longer

work as a team to jointly make decisions regarding the health, education, and welfare of Child;

likewise, Father had demonstrated that he would continue to serve Missouri’s public policy of

frequent, continuing, and meaningful contact with both parents. These conclusions are supported

by substantial and competent evidence.

 13
 On numerous occasions, Mother restricted Father’s parenting time. After July 2019, when

Child returned to Missouri with Mother, Father was only allowed to exercise parenting time during

Thanksgiving 2019, for one hour during a supervised visit in December 2019, and for just under

two months during Child’s summer break in 2020. Mother also constantly disrupted Child and

Father’s virtual visits by recording the calls, and interjecting and distracting Child during the calls,

preventing meaningful contacts between Father and Child. Finally, the GAL testified that Mother

“is not likely, if given sole custody of the child, to allow for frequent and meaningful contact

between [Father] and [Child],” and the circuit court found this testimony credible. To the contrary,

the evidence demonstrated that Father did not treat Mother the same way; instead, he supported

continuing and meaningful contact between Mother and Child.

 The circuit court’s judgment also included findings directed at the inability of Mother and

Father to jointly participate in decisions affecting the health, education, and welfare of Child and

that it was not in Child’s best interests to continue joint legal custody. As referenced previously

from the record and judgment, Mother refused to include Father as an emergency contact on

Child’s school records. Mother failed to inform Father in a reasonably timely manner of Child’s

behavioral difficulties in school resulting in expulsion and out-of-school suspension. Mother

failed to inform or consult Father about her intention to have Child evaluated for autism. Mother

and Father could not agree whether Child should be enrolled in after-school care and, although

they agreed to “spanking” as a method of disciplining Child, they could not agree upon the

meaning of “spanking.” Additionally, Mother twice asked Father to consent to terminating his

parental rights. This substantial evidence indicates an inability of the parents to make joint

decisions regarding Child’s health, education, and welfare.

 14
 Finally, it is undisputed that the circuit court included a five-page parenting plan in its

judgment addressing all of the statutory requirements of section 452.375.9.

 Accordingly, this Court can readily discern, from the circuit court’s judgment, the

statutorily required findings to support the trial court’s decision to reject the parenting plans

submitted by Mother and Father and, instead, adopt the GAL’s proposed parenting plan, which

suggested sole legal custody for Father and joint physical custody with Father’s address designated

as Child’s address for schooling and mailing.

 Point II is denied.

 Point III

 In Mother’s third point on appeal, she impermissibly—again—asserts two sufficiency-of-

the-evidence claims in one point relied on: (1) that the circuit court erred in ordering her to pay

child support to Father; and (2) that the circuit court erred in denying her request for child support.

 Like her first point, Mother’s third point on appeal is multifarious as it combines two

independent claims rather than a single claim of error and, therefore, preserves nothing for review.

Mother also failed to include the applicable standard of review in violation of Rule 84.04(e).

Further, Mother failed to include a statement describing whether and how the error was preserved

for appellate review, also in violation of Rule 84.04(e).

 Indeed, Mother failed to raise any challenge to the circuit court ordering her to pay child

support, either at trial or in an after-trial motion. Consequently, Mother’s claim that the trial court

erred in ordering her to pay child support is unpreserved. Brown v. Brown, 423 S.W.3d 784, 788

(Mo. banc 2014) (“An issue that was never presented to or decided by the trial court is not

preserved for appellate review.”).

 15
 And, though Mother’s claim that the circuit court erred in denying her request for

retroactive child support was preserved for appellate review, Mother has abandoned this claim on

appeal by providing no legal analysis whatsoever and failing to otherwise develop or advance any

legal reasoning for her claim on appeal. Wallace v. Frazier, 546 S.W.3d 624, 628 (Mo. App. W.D.

2018) (“Points that are not developed in the argument are deemed to be abandoned.”). In fact,

Mother dedicates but one sentence and fails to reference any legal precedent in support of this

claim in her appellate briefing.

 As a matter of discretion, we generally will review claims on the merits where such review

is not hindered by briefing violations, “but we will do so only if the argument is readily

understandable.” In re S.H.P., No. WD84181, 2021 WL 5313035, at *7 (Mo. App. W.D. Nov. 16,

2021). Here, we are unable to discern Mother’s argument without becoming an advocate for her.

 Point III is denied.5

 Point IV

 In Mother’s fourth point on appeal, she asserts a sufficiency-of-the-evidence claim that the

circuit court erred in denying her motion to reapportion the GAL’s fees in accordance with the

parties’ respective incomes.

 5
 Ex gratia, we note in this sufficiency-of-the-evidence challenge that Mother’s briefing as to the topic of
Form 14 analysis is replete with a presentation of the record on appeal recited in a light most favorable to Mother’s
view of the evidence as opposed to the requirement that we view the evidence in a light most favorable to the judgment,
including deference to the circuit court on credibility determinations. See LaBarca v. LaBarca, 534 S.W.3d 329, 335
(Mo. App. W.D. 2017). And, as to Mother’s assertion that she be entitled to retroactive child support, we note that
“[t]he decision to make an award of child support retroactive is within the sound discretion of the [circuit] court.”
Finch v. Finch, 442 S.W.3d 209, 221 (Mo. App. W.D. 2014). “An abuse of discretion occurs when the court’s order
is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice
and indicate a lack of careful consideration.” Davis v. Wieland, 557 S.W.3d 340, 348 (Mo. App. W.D. 2018) (internal
quotation marks omitted). Here, where Mother resides with her parents and does not pay for rent, utilities, or groceries,
and Child was largely in the physical custody of Mother before the hearings on the motions to modify because Mother
took Child without Father’s consent and contrary to the then existing parenting plan, the circuit court’s ruling on the
issue of retroactive child support was not an abuse of discretion.

 16
 Again, Mother’s point on appeal suffers briefing deficiencies. Mother failed to include a

statement regarding whether and how this claim is preserved. She makes no reference to the

applicable standard of review. And, her entire argument on appeal relating to this topic consists

of five sentences that recite evidence in a light most favorable to Mother’s viewpoint of the case,

not the judgment, and without citation to legal precedent.

 Once more, Mother has abandoned this claim by providing no legal analysis and failing to

otherwise develop or advance any legal reasoning. Wallace, 546 S.W.3d at 628. Mother’s briefing

errors make reviewing the merits of her claim impossible without becoming an advocate for her.

 Point IV is denied.6

 Conclusion

 The circuit court’s Modification Judgment is affirmed.

 /s/ Mark D. Pfeiffer
 Mark D. Pfeiffer, Presiding Judge

Karen King Mitchell and Gary D. Witt, Judges, concur.

 6
 Again, ex gratia, we note that a circuit court’s order to the parties to pay the GAL’s reasonable fees is
reviewed “for abuse of discretion.” Davis v. Schmidt, 210 S.W.3d 494, 511 (Mo. App. W.D. 2007). Here, where the
GAL was, in the first instance, appointed by the circuit court due to abuse allegations by Mother that were ultimately
deemed unsubstantiated, it is hardly an abuse of discretion for the circuit court to order Mother to pay 50% of the
GAL fees that were necessitated by her abuse allegations that were ultimately found by the circuit court to lack
credibility.

 17